# THE CITY OF JACKSONVILLE

*v.*

# THE JACKSONVILLE RAILWAY COMPANY.

1. TOWN PLAT—*effect of as a conveyance to the public.* A town plat, when duly certified, acknowledged and recorded according to the statute, is deemed, in law and in equity, a sufficient conveyance to vest the fee simple of the land therein designated as for public squares, parks, commons, streets, alleys or other public uses, in the corporation for the uses and purposes expressed or intended, and as a general warranty against the donors to the donees for the uses and purposes intended. The statute makes the municipality a trustee to effectuate the intention of the donor.

2. DEDICATION—*construed with reference to object intended.* A dedication must always be construed with reference to the object with which it was made. Where streets are dedicated by means of a town plat, they will be considered as designed for the purpose of travel and passage in any mode not to destroy their usefulness, while a public square will be considered as intended for beauty and adornment, and for the health and recreation

of the public, and the municipality will have no right or power to divert it to other uses or purposes.

3. CONSTITUTIONAL LAW—*power of legislature to divert a public square to other uses.* The power of the legislature to repeal the charter of a city can not be extended to the right to divert property given to the public for one use to a wholly different and inconsistent use. The power can not exist to divert property from the purpose to which it was donated. Even upon a repeal of the charter of the city, the trust would not cease, if its purpose can be ascertained, but it will be enforced for the benefit of those for whose use it was intended.

4. Where a public square is vested in a municipal corporation, the *cestuis que use* acquire a vested estate in the same, and neither the municipality nor the legislature can divert it to railroad or other private use. The power of the latter is not unlimited, and can not be exercised to interfere with trust estates and vested rights. And if either should attempt to do so, a court of equity would interfere and enforce the execution of the trust either upon the application of the owners of lots abutting upon the square, or, upon the application of the city, the trustee.

5. INJUNCTION—*to prevent the diversion of a public square to railroad purposes.* A railway company was, by an act of the legislature, authorized to construct and operate a railway in a city, "in, over and across and along any and all the avenues, streets, public grounds, squares and alleys" of the city. Under this power the company claimed the right to construct and operate its road across a public square which had been dedicated by plat to the city. It appeared that city lots had been sold with reference to such square and around it, which had been improved, the value of which were enhanced on account of the square, and that the city had beautified and adorned the same. The city filed a bill in chancery to prevent the company from appropriating the same for railroad purposes: *Held*, that the railway company should be perpetually enjoined from all attempts to lay down the track of its road through or across the inclosed public square, reversing the decree below.

APPEAL from the Circuit Court of Morgan county; the Hon. CHARLES D. HODGES, Judge, presiding.

Mr. EDWARD DUNN, Mr. CYRUS EPLER, and Mr. HENRY E. DUMMER, for the appellant.

Mr. WM. BROWN, and Messrs. MORRISON & WHITLOCK, for the appellee.

Mr. JUSTICE THORNTON delivered the opinion of the Court:

By an act of the legislature, the appellee corporation was authorized to construct and operate a railway in the town of Jacksonville, " in, over, across and along any and all the avenues, streets, public grounds, squares and alleys within the present and future corporate limits of said town."

By virtue of its charter, the railway company claim the right to construct the track of its road across a public square, operate its road there, and thus frustrate the original purpose for which the ground was dedicated, and destroy its future benefit and enjoyment as a public park.

This bill was filed to restrain the company from such an appropriation of this public ground.

It has been stipulated between the parties that the square was dedicated to the public by the original proprietors of the land, by a plat duly acknowledged and recorded according to the statute, with streets 100 feet wide on each side; and that, in 1847, it was inclosed by the city, and has since been used by the public as a park; that the city has beautified it by the planting of trees, and enacted ordinances for their protection and preservation; that it was further recognized as a public square by the original proprietors by making conveyances of lots abutting thereon, in which the square was referred to as a boundary, and that all the lots abutting thereon have been improved and are occupied, and are more valuable than other lots in the city, on account of their proximity to the square.

The effect to be given to such a plat as was certified, acknowledged and recorded in this case, is clearly defined by the statute. It is deemed, in law and equity, a sufficient conveyance to vest the fee simple of the land designated, and must be regarded as a general warranty against the donors to the donees for the uses and purposes therein expressed or intended, and for no other use or purpose whatever. The statute further provides that the lands intended to be for streets, alleys, ways, commons or other public uses, shall be held in

the corporate name of the town or city, in trust to and for the uses and purposes expressed or intended.    Rev. Stat. 1845, sec. 21, p. 115.

The plat must be construed in connection with the statute. The latter gives character to the plat, and makes the municipality a trustee to effectuate the intention of the donor.

What were the uses and purposes intended?    Streets and a public square are donated.    Each has a well known and well defined use and meaning.    The one was designed for the purpose of travel; and the right of passage over the streets, in any mode not to destroy their usefulness, was given by the plat.    The square was intended for beauty and adornment, and for the health and recreation of the public.    A dedication must always be construed with reference to the object with which it was made.    The donors never could have intended that this ground should be used as a street.

The power of the legislature to repeal the charters of municipal corporations can not be extended to the right to divert property given to the public for one use, to a wholly different and inconsistent use.    The power can not exist to divert property from the purpose for which it was donated.    This plat was a solemn dedication of the ground to the corporation, to be held in trust for the use of the public.    The donation was made for a certain specific and defined purpose.    That purpose is unmistakable.    As soon as the plat is recorded the statute declares the trust, that the property shall be held for the uses intended, and for no other.    The city has accepted the trust.    It must be preserved, or the land must revert to the original proprietors.    The city has acted in good faith. It has inclosed, planted with trees and improved and embellished the ground dedicated, and thus maintained the purpose of the donor.    Lots abutting upon the square have been purchased and built upon with reference to it.    They have also been made more valuable by this open ground in front of them.

A court of equity has the right to enforce the execution of the plainly declared trust, either upon the application of the owners of lots abutting upon the square, or upon the application of the city, the trustee. The legislature can not pervert the trust, and give the land to this private corporation. This would be bad faith to the original proprietors, as well as to the public.

In this case the fee was vested in the corporation of the city, for the uses intended. The *cestui que use* acquired a vested estate. Even upon a repeal of the charter of the city by the legislature, the trust would not cease, if the purpose of its creation can be attained It will still be enforced for the benefit of those for whose use it was created. The square is valuable property, intended for the use of the public, and appurtenant to the estates of the abutting lot owners, and the trustee must be permitted to preserve it for the expressed and intended purposes of the trust.

We are fully sustained in the view we have taken, by the following cases: *City of Cincinnati* v. *The Lessee of White*, 6 Peters R. 431; *Trustees of the Village of Watertown* v. *Cowen*, 4 Paige, 510: *LeClercq et al.* v. *The Trustees of the Town of Gallipolis*, 7 Ohio, 354; *Carter* v. *The City of Chicago*, 57 Ill. 283.

It would scarcely be contended that the city, holding the property merely as trustee, could divert the trust, divide the square into lots, and sell and convey them to private individuals, to be appropriated to such purposes as they might desire. The conveyance would be an absolute nullity, and the act would be abhorrent to every principle of right. It would be a gross perversion of a trust, which should be prevented by the interposition of a court of equity. If the municipality could not divert the property, neither could the legislature. The power of the latter is not unlimited, and can not be exercised to interfere with trust estates and vested rights.

In *Price et al.* v. *Thompson et al.* 48 Mo. 361, the trustees of the town were about to open a public park, and run streets through it. The original owner of the land, upon the plat

of the town, designated four acres as a park. The language of the statute of Missouri, in declaring the effect of the plat, is identical with our own. The court enjoined the trustees, and held that the park should ever remain public, and in the condition in which it was donated.

In *Warren* v. *The Mayor of Lyons City*, 22 Iowa, 351, it was held that neither the municipal authorities nor the legislature could divert ground dedicated as a public square to uses foreign to those for which the dedication was made, and that such an act of the legislature would be unconstitutional.

In this case the attempted use of the public square by the railway company for the track of its road, is a manifest perversion of the trust created and declared; would operate injuriously to the public and the abutting lot owners; would mar the beauty of the ground, destroy it as a place of public recreation, and can not be justified.

We are, therefore, of opinion that the railway company should be perpetually enjoined from all attempts to lay down the track of its road through or across the inclosed public square.

The decree of the court below is reversed, and the cause remanded, with instructions to enter a decree restraining the railway company in accordance with this opinion.

*Decree reversed.*