THE METROPOLITAN CITY RAILWAY COMPANY

*v.*

THE CITY OF CHICAGO.

*Filed at Ottawa November 20, 1880.*

1. CHANCERY JURISDICTION—*to prevent public nuisances.* A court of equity has jurisdiction on the application of the State government to restrain the placing of an obstruction in or upon public highways, streets, bridges, public grounds and navigable waters; and the legislature having committed a portion of its sovereignty to municipalities, such as cities, towns and villages in respect to streets, highways and public grounds within their limits, they are invested with the authority of the State in this respect and may maintain a bill in equity to restrain an obstruction of streets, etc., in their limits.

2. STREET RAILWAY—*consent of local authorities.* Under the constitution of this State the legislature can not grant the right to construct and operate a street railroad within any city, town or incorporated village except by requiring the consent of the local authorities having control of the streets or highways proposed to be occupied by such street railroads, and this applies to horse railways.

3. SAME—*publication of notice.* Under the "act in regard to horse and dummy railroads," approved March 9, 1874, the city, town or village author-

ities are prohibited from giving consent to construct and operate a horse railroad in the streets, unless at least ten day's public notice of the time and place of presenting the petition shall first have been given by publication in some newspaper published in the city or county where such road is to be constructed. The publication of the report of a committee recommending the granting of such leave, ten days before the adoption of an ordinance authorizing the construction of such a road, and the publication of the ordinance, is not a compliance with the statute.

APPEAL from the Appellate Court for the First District; —heard in that court on appeal from the Circuit Court of Cook County; the Hon. W. H. BARNUM, Judge, presiding.

Messrs. LAWRENCE, CAMPBELL & LAWRENCE, and Mr. D. L. HOUGH, for the appellant:

That a court of equity has no jurisdiction to enjoin a nuisance until the question is settled by a trial by jury or at law, see *Dunning* v. *City of Aurora*, 40 Ill. 82; *Murphy* v. *City of Chicago*, 29 id. 286; *City of Jacksonville* v. *Jacksonville Railway Company*, 67 id. 542; *Village of Watertown* v. *Cowan*, 4 Paige, 410; *C. & V. R. R. Co.* v. *People*, 92 id. 194.

As to the presumption that an ordinance was passed in conformity to its charter, see *City of Covington* v. *Ludlow*, 1 Metc. (Ky.) 298; *City of Lexington* v. *Headley*, 5 Bush, 508; *McCormick* v. *Bay City*, 23 Mich. 463; *Larrison* v. *Railroad Company*, 77 id. 18.

The ordinance granting the right to lay the tracks on the streets was adopted and approved before the city adopted, by a vote, the general incorporation law of 1872, which required the petition of the owners of abutting land, representing more than one-half of the frontage, and hence was properly adopted without such petition.

Again, the act entitled "Horse and Dummy Railroads," passed on March 19, 1874, being subsequent to the act in relation to the incorporation of cities, etc., and relating solely to the establishment and operating of horse and dummy railroads, and presenting for the first time in our legislation, a complete enactment designed to regulate that whole subject,

must, of course, be considered as repealing any provisions of the city act of 1872 inconsistent with those found in the horse and dummy act. *Culver* v. *Third National Bank*, 64 Ill. 534.

It is contended that the ordinance is void, because the license runs for twenty-five years, when by the terms of the horse and dummy act it must be limited to twenty years. When a power is given, its exercise will be good as to the extent conferred, and only void as to the excess. 1 Sug. on Powers, (3d. Am. ed.), 75; *State* v. *Allen*, 43 Ill. 460; *Commonwealth* v. *Weiher*, 3 Metc. 448; 4 Kent's Com. 346.

Mr. C. BECKWITH, and Mr. JOSEPH F. BONFIELD, for the appellee:

1. The complete title and control of the public streets is in the city as trustee for the public. The power and duty to prevent illegal encroachments and obstructions is vested by law in the municipal corporation. *Moses* v. *Railroad Co.* 21 Ill. 522; *Chicago* v. *Rumsey*, 87 id. 348; *Northern Transportation Co.* v. *Chicago*, 99 U. S. 635.

2. A court of equity has jurisdiction to remove clouds upon and quiet the title of a municipal corporation to public grounds, streets and highways, to restrain encroachments therein, and acts sought to be performed under an invalid ordinance. *City of Jacksonville* v. *Jacksonville R. R. Co.* 67 Ill. 540; *Trustees of Watertown* v. *Cowan*, 4 Paige, 510; *Attorney General* v. *Wilson*, 1 Craig & Phillips, 1; *Attorney General* v. *Johnson*, Wilson's Ch. R. (2,) 87; *Attorney General* v. *Terry*, L. R., 9 Ch. App. 423; *Attorney General* v. *Cohoes*, 6 Paige, 133; *United States* v. *Duluth*, 1 Dillon, 469; *Attorney General* v. *Mayor, etc.* 1 Molloy, 103; *Attorney General* v. *London*, 8 Beav. 270; *Attorney General* v. *Richards*, 2 Anstruther, 603; *Attorney General* v. *Forbes*, 2 Mylne & Craig, 123; *City of Georgetown* v. *Alexandria Canal Company*, 12 Peters, 93; *People* v. *City of St. Louis*, 5 Gilm. 351.

3. The requisition of the statute, requiring ten days' notice of the time and place of presenting the petition of the appellant, for the consent by the city to the use of the streets for horse railroad purposes, is jurisdictional; the city council could acquire no jurisdiction over the subject matter of the petition until such notice was published and presented to the council, sitting as a legislative body. *People* v. *Hatch*, 33 Ill. 156; *People* v. *Starne*, 35 id. 121; Wharton on Evidence, Vol. 2, sec. 824. and note, and sec. 1310; *Clerk* v. *Wardwell*, 55 Me. 61; *Barnett* v. *Wolfe*, 70 id. 76; *Haywood* v. *Collins*, 60 id. 341; *Chestnut* v. *Marsh*, 12 id. 173; *Turley* v. *Logan*, 17 id. 151; *Ryan* v. *Lynch*, 68 id. 160.

4. If the journal of the city council fails to show that the notice of publication, being a jurisdictional fact required by the horse and dummy act, was presented to the council, that record is conclusive evidence that no such notice was presented to that body. A fact which should be a matter of record can not be proven by parol.

The city council " shall keep a journal of its own proceedings." City Charter, sec. 40, art. 3, Cothran's Rev. Stat. p. 221.

The clerk shall attend all meetings of the city council, "and keep a full record of its proceedings in the journal." City Charter, sec. 81, art. 6, Cothran's Rev. Stat. p. 237; *People* v. *Hatch*, 33 Ill. 156; *Barnett* v. *Wolfe*, 70 id. 76; *Sherwin* v. *Bugbee*, 17 Vt. 339, and cases cited under last preceding point.

5. Before any legal consent could be granted by the passage of a valid ordinance, at least ten days' public notice of the time and place of presenting the petition of the company was necessary to be given, by publication in some newspaper published in the county, and the failure to give such notice invalidates such ordinance. Without such notice, it was an act *ultra vires* the city council. *Roberts* v. *Easton*, 19 Ohio State, 78; *Swift* v. *City of Williamsburg*, 24 Barb. 427; *Jeffries* v. *Swampscott*, 105 Mass. 535; *Wilson* v. *Lyman*, 119

Mass. 174; *Wamisit Power Company* v. *Allen*, 120 Mass. 352; *Lewiston* v. *Cumberland County Commissioners*, 30 Maine, 19; 2 Dillon Mun. Cor. secs. 471, 643; *People* v. *Jackson County*, 92 Ill. 441.

6.    The city council has no power to grant the right to lay down railroad tracks on the streets of the city, except upon a petition of the owners of the land abutting, representing more than one-half the frontage of such streets, or so much thereof as is sought to be used for such purpose.    Constitution, art. 11, sec. 4, Cothran's Rev. Stat. p. 28; City Charter, art. 5, sec. 62, clauses 24 and 90; *Roberts* v. *Easton*, 19 Ohio State, 78, and cases cited under last preceding point.

7.    The provision of the city charter requiring the consent of owners of abutting land representing more than one-half the frontage of such portion of the public streets as is used for horse railway purposes, was not repealed by implication by force of the provisions of the horse and dummy act.    *Town of Ottawa* v. *County of LaSalle*, 12 Ill. 339; *Bruce* v. *Schuyler*, 4 Gilm. 265; Potter's Dwarris, and notes 4 and 5, 154; *Dingman* v. *People*, 51 Ill. 277; Bacon's Ab. title Stat. D.; *Bowen* v. *Lease*, 5 Hill, 221; *Kinney* v. *Mallory*, 3 Ala. 626; *Harding* v. *Railroad Co*, 65 Ill. 90.

8.    Although the ordinance was passed by the city council before the adoption of the present city charter, it was not accepted, and no bond was filed by appellant until after the new charter went into effect.    Until the bond was filed, the ordinance was a mere proposition.    The ordinance having been accepted, and the bond filed, after the adoption of the act for the incorporation of cities and villages, whatever rights were then acquired were subject to and limited by the provisions of the new charter.    *State* v. *Dawson*, 16 Ind. 40; *Stone* v. *Wisconsin*, 4 Otto, 181; *Aspinwall* v. *Daviess*, 22 How. 364; *Rice* v. *Radiman*, 10 Mich. 125.

9.    The conditions imposed by the third section of the horse and dummy act, and upon which the authority to occupy

the streets of the city for horse railway purposes are contingent, are conditions precedent and mandatory. They affect the rights of third persons, and of the public, and must be so construed. *Cowgill* v. *Long*, 15 Ill. 202; *Supervisors of Magara* v. *The People*, 7 Hill, 511; *Wheeler* v. *Chicago*, 24 Ill. 107; *Kam* v. *Footh*, 70 id. 590; *Mix* v. *The People*, 72 id. 244; *Fowler* v. *Perkins*, 77 id. 271; *Ross* v. *The People*, 78 id. 375.

10. The ordinance is void, for the further reason that said section three of the horse and dummy act also provides that no consent to the use of the streets for railway purposes shall be granted, except upon the condition that such company shall pay all damages to owners of property abutting upon such streets, such compensation to be ascertained and paid in the manner provided by law for the exercise of the right of eminent domain. The ordinance does not protect abutting owners, as required by the statute. *The People* v. *Schemerhorn*, 19 Bush, 559; *Clark* v. *Chance*, 5 Mich. 154; *Andover Turnpike Company* v. *Gould*, 6 Mass. 44; *Lund* v. *New Bedford*, 121 Mass. 286. Abutters can not enjoin the laying down of tracks. *Peoria and Rock Island R. R. Company* v. *Schertz*, 84 Ill. 135.; *Stetsen* v. *Chicago and Evanston R. R. Company*, 75 id. 74.

11. The city council had no power to authorize the construction of a street railway for the term provided by the ordinance. The period designated was about five years in excess of the statutory limitation, and until the city should elect to purchase the property of appellant used for such railway purposes. These provisions being dependent upon each other, and so mutually connected as to be inseparable without changing the clear intent of the parties—one part being void the whole must fall. Cooley on Const. Limit. 177–8–9, 216, *note*; Sedgwick on Stat. and Const. Law, 413 and *note*; *Warner* v. *Charleston*, 2 Gray, 98; *Austin* v. *Murray*, 16 Pick. 126; 1 La. Ann. 113; *Hinze* v. *The People*, 92 Ill. 407.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

This was a bill in chancery, brought in the circuit court of Cook county, by the city of Chicago, against the Metropolitan City Railway Company.

The bill alleges that on the 30th day of April, 1875, the common council of the city of Chicago passed an ordinance purporting to license said company to occupy, for horse railroad purposes, certain streets in the city; that the ordinance is void for several reasons stated in the bill, one of them being, that the ordinance was passed by the common council without ten days' public notice having been given, as required by law, in some newspaper of Chicago, or in said county of Cook, of the time and place of presenting the petition of the company for the consent of the council to locate and construct a railway upon or along the streets in the ordinance mentioned; that on the 13th day of October, 1878, the company undertook to lay down a portion of its track on Lake street, and would have done so, if it had not been prevented by the police force of the city. A perpetual injunction is prayed, enjoining the company from laying down tracks and operating cars on said streets by virtue of such alleged void ordinance.

Answer and replication were filed, proofs taken and cause heard, and a decree entered in favor of complainant. The company appealed to the Appellate Court for the First District, and that court affirmed the decree of the circuit court, and the company prosecutes a further appeal to this court.

The jurisdiction of a court of chancery in this case is denied by appellant.

As was said by this court, in *The People* v. *The City of St. Louis*, 5 Gilm. 351, " it has been repeatedly held that any erection or obstruction placed in any part of a public road or street, which deprives the public of the use of any part thereof, is a nuisance." This is, of course, where no authority is given.

The authorities abundantly establish that, upon application of the government, the courts of chancery of England, of this State, and of the United States, will respectively exercise their authority to restrain the placing of obstructions in or upon public highways, streets, bridges, grounds and navigable waters.  *Attorney General* v. *London,* 8 Beav. 270; *Attorney General* v. *Richards,* 2 Anstruther, 603; *Attorney General* v. *Forbes,* 2 Myln. & Cr. 123; *Attorney General* v. *Mayor, etc.* 1 Molloy, 103; *City of Georgetown* v. *Alexandria Canal Co.* 12 Peters, 93; *United States* v. *Duluth,* 1 Dill. 469; *Trustees of Watertown* v. *Cowan,* 4 Paige, 510; *Attorney General* v. *Cohoes,* 6 id. 133; *The People* v. *The City of St. Louis et al.* 5 Gilm. 351; *City of Jacksonville* v. *Jacksonville Railway Co.* 67 Ill. 540.

In *Attorney General* v. *Forbes,* Lord COTTENHAM said, with respect to this question of jurisdiction: "It was broadly asserted that an application to this court to prevent a nuisance to a public road was never heard of.  A little research, however, would have found many such instances.  Many cases might have been produced in which the court has interfered to prevent nuisances to public rivers and to public harbors; and the court of exchequer, as well as this court, acting as a court of equity, has a well established jurisdiction upon a proceeding by way of information, to prevent nuisances to public harbors and public roads, and, in short, to prevent public nuisances."

In the *City of Georgetown* v. *The Alexandria Caual Co.* 12 Peters, 93, the court say: "Besides the remedy at law, it is now settled that a court of equity may take jurisdiction in cases of public nuisance by an information filed by the Attorney General.  The jurisdiction has been finally sustained, upon the principle that equity can give more adequate and complete relief than can be obtained at law."

In *The People* v. *The City of St. Louis et al.* 5 Gilm. 351, which was a case of an injunction to prevent an obstruction in the Mississippi river, this court said: "The jurisdiction

of the court over the subject matter of the suit was also undoubted. The court of chancery may grant preventive as well as remedial relief, and this may be done where the act threatened would be punishable under the criminal laws as a nuisance."

The State has a like control over highways, streets and public grounds, as is exercised by the crown in England, and may have like remedies against persons unlawfully obstructing the same. A portion of the political power of the State is committed to municipalities. The General Assembly of this State has vested in cities, villages and towns the right to control the use of highways, streets and public grounds within their respective limits, and they are invested with the authority of the crown and of the State, in this respect, to file bills to prevent and remove obstructions from the streets, highways and public grounds under their control. *Trustees of Watertown* v. *Cowen*, 4 Paige, 510; *City of Jacksonville* v. *Jacksonville Railway Co.* 67 Ill. 540.

Appellant concedes that under certain circumstances chancery may be appealed to for the purpose of enjoining a nuisance, but denies that those circumstances exist in the present case. It is said that a railway track laid down in a street is not to be considered as *per se* a nuisance; that it depends upon whether authority be given or not; that the bill here is based upon the theory that no valid leave has been given, because of the fact that the ordinance purporting to give it is void for want of notice of an application to the city council for the passage of the ordinance having been published. But that it is contended on the other hand that notice was published; so that the case turns upon a question of fact, namely, publication or no publication; upon which appellee has the right to the decision of a jury. And reference is made to the case of *Dunning* v. *The City of Aurora et al.* 40 Ill. 481, as being conclusive on this point in favor of appellee, dwelling upon an expression in the opinion there, " that if equity were to assume jurisdiction to settle the right and to abate public

nuisances, it would effectually destroy the right of trial by jury in this class of cases." That was a case really between private individuals, the bill having been filed by Dunning, and the circumstances might very properly induce the court not to interfere at the suit of Dunning to compel the removal by persons claiming to be owners of a row of buildings they had long been in possession of, on ground which Dunning claimed to be a public street, until the right had been tried at law.

We do not consider the decision in that case to be out of harmony with that we make in the present case, and the same of *C. & V. R. R. Co.* v. *The People*, 92 Ill. 170, cited by appellee's counsel.

In *Attorney General* v. *London, supra*, the case of an information for the removal of an alleged obstruction of the river Thames, it was objected by the defendant that so much of the bill as sought the removal of the obstruction, if it was not a nuisance, was a mere ejectment bill, etc., and that there was a remedy at law.

The court held that the question was not whether there was any jurisdiction in such cases between subject and subject, and that in the case of an information affecting the rights and property of the crown the court of chancery had jurisdiction, notwithstanding the crown might have proceeded at law.

In *Attorney General* v. *Richards, supra,* which was the case of an information on the equity side of the exchequer, for restraining further erections between high and low water mark in Portsmouth harbor, and abating those made, it was urged that the remedy was at law, but the court held that the crown might proceed in equity, notwithstanding a question of fact was raised as to its title.

In *Trustees of Watertown* v. *Cowan, supra*, the point was made by counsel in the case that an injunction should not have been granted until the question of right was determined at law, but the chancellor did notice this point in his opinion,

and affirmed the final decree of the vice chancellor, perpetually enjoining the defendants from building upon a public square and street.

The circumstance that a question of fact is raised upon the ground of jurisdiction, which it is desirable and more fit to have tried by a jury, can not be a test to apply to determine that chancery should not take jurisdiction. If it were, such jurisdiction might be defeated in almost any case.

It is the duty of cities to keep their streets in good repair and condition, and for failure in that respect they are held responsible in damages for any injury suffered thereby. They should have power to keep the streets free and clear from obstruction, and must be permitted the use of the appropriate remedies to that end. We do not consider the objection to the jurisdiction as well taken.

It is a provision of the constitution of the State, that " no law shall be passed by the General Assembly granting the right to construct and operate a street railroad within any city, town or incorporated village, without requiring the consent of the local authorities having the control of the streets or highways proposed to be occupied by such street railroad." Art. 11, Sec. 4.

The "Act in regard to Horse and Dummy Railroads," approved March 19, 1874, provides that the consent of a city to construct and operate a horse railroad in its streets may be granted upon the petition of the company proposing to construct and operate such road; "*Provided,* no such consent shall be granted, unless at least ten days' public notice of the time and place of presenting such petition shall have been first given by publication in some newspaper published in the city or county where such road is to be constructed," etc.

It is admitted by appellee's counsel that such a publication of notice was necessary. Was it made?

There was introduced in evidence a certified copy of portions of the journal of the city council purporting to contain all the proceedings of the city council in any manner relating to

appellant or its application to lay tracks in the streets mentioned in the ordinance.

Those proceedings do not show, and make no allusion to, the publication of any notice precedent to the introduction or passage of the ordinance authorizing appellant to lay tracks. There is nothing of the kind among the papers pertaining to the matter.

The company introduced the testimony of two of the aldermen, O'Brien and Stout, who were on the committee to which the ordinance was referred, and of one of the directors of the company, Mr. Mahoney.

O'Brien says: "I will not swear positively there was such a certificate of publication of notice before the committee on railroads, but to the best of my opinion there was."

Stout says he recollects the introduction of the ordinance and publication in a newspaper of an intention to apply to the common council for the passage of such ordinance; that it was his impression the advertisement was attached to the ordinance.

Mahoney testifies that he saw the advertisement of the notice; that the ordinance, after it was drawn up ready to be presented to the city council, was delayed some time in order to have the notification given.

This is substantially all the testimony going to show notice was published.

It was shown, on the part of the city, that there were some 125 newspapers published in the city of Chicago and county of Cook, in March, 1875, and that after a thorough examination of the files of nearly all of them, it could not be found that the notice was published.

Those not examined were a very few obscure sheets, in which there is no probability such a notice would be published.

It is shown further, that on the 7th day of May, 1875, four days after the ordinance was approved, it being approved May 3, 1875, some attorney applied for the company to Mr.

Moody, the deputy city clerk, for a certified copy of the ordinance, and caused Mr. Moody to insert in the certificate of the copy the statement that, "Due notice has been given, by publication, of the presentation of the petition for said ordinance." Mr. Moody testifies that at the time he wrote that out he did not know that it was true or not; that he had no evidence that such notice had been published; that he searched the papers for the purpose of ascertaining, and refused to sign the certificate, remarking to the attorney that he himself would have to get Mr. Forrest, the city clerk, to sign it. The deputy had authority to sign Mr. Forrest's name to such papers, and it was his custom to do so in a majority of cases.

Mr. Forrest testifies to his signature to the certificate; that he did not know at the time notice had been published; that he did not know the contents of the certificate when he signed it, and that it was his custom to sign papers coming from Mr. Moody without examination, the latter being in charge of the office. Had there been at that time a notice in existence, we can not but think an attorney acting for the company would not have rested upon a certificate with the signature thereto obtained in such a way; but with attention called to the absence of a notice from the files, and aware, as he seems to have been, of its importance, would have obtained a copy of the notice, when it might at that time have been so easily done, and would have preserved the sure evidence of the same, so as to be beyond further question. There could then easily have been obtained and filed the publisher's certificate of the publication, which the statute makes evidence.

We have no doubt that had such a notice ever been published, the same would now be shown from the files of the newspapers then published in Chicago and the county of Cook, and would appear by those which have been examined, the time running back so short a distance, and no reason appearing why the notice may not thus be found.

We are satisfied, from the evidence, that such a notice was never published. The ordinance must then be held invalid and the decree correct.

It appears that on April 16, 1875, the committee on railroads made a report to the city council with reference to the ordinance, and both report and ordinance were ordered to be laid over and published; that both that report and ordinance were published in full in a daily newspaper published in Chicago, on April 19, 1875, and the ordinance was not passed until April 30, 1875, more than ten days afterward. And it is suggested that this publication may be considered as a substantial compliance with the requirement of the statute that ten days' notice should be given of the time and place of presenting the petition to the city council.

The statute intended to give every person interested opportunity for a fair and impartial hearing; that he might appear and be heard at the outset, with reference to the committee to which the petition may be referred, and before such committee. The matter here had already been heard. The committee had fully considered the ordinance, had passed upon it, and recommended its passage. The publication of this report recommending the passage of the ordinance and of the ordinance accompanying it, although made ten days before the passage of the ordinance, we can not accept as a compliance with the statute.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*