THE PITTSBURG, FORT WAYNE AND CHICAGO RAILROAD COMPANY

*v.*

MICHAEL REICH.

*Filed at Ottawa November 10, 1881.*

1. EVIDENCE—*opinions of witnesses as to use, etc., of highway.* Whether a thoroughfare is used, and how used, and worked upon by public authorities, or abandoned, depends upon certain facts only, and not on the opinions of witnesses. So, also, the use made of a street by a railroad company is an existing fact, while the use that ought to be made of it is a mere matter of opinion. Witnesses not experts should be allowed to testify only to facts, and not to give their opinions, and leave the jury to draw conclusions from the facts.

2. In a suit by a lot owner against a railroad company to recover damages to his lot, caused by the use of a street fronting the same, for railroad tracks, and thereby preventing ingress and egress to and from the same, etc., the statements of the officers of the road as to the intended future use of the street are not admissible in behalf of the company, as being hearsay, and a

matter of opinion. An actual direction as to its use might be proper evidence in such case.

3. HIGHWAYS—STREETS—*of their use for railroad purposes—extent of the use granted.* A grant of power to a railroad company to ·construct its road upon or across a road or highway which the route of its road may intersect, the corporation to restore the road or highway to its former state, or in a sufficient manner not to impair its usefulness, is equivalent to allowing a joint use of the highway by the company with the public, protecting its use as an ordinary highway against any impairment. It does not authorize a use to the exclusion of ordinary travel thereon.

4. SAME—*power of county or town officers to grant use of street or highway for railroad purposes—under act of 1849.* Section 26 of the general Railroad act of 1849, authorizing the county or town officers having charge of lands belonging to their county or town to grant the right of way over the same to railroad corporations, has application only to lands which belong to counties and towns as owners thereof, and not to lands in which they hold the nominal title only, for a prescribed public use, such as for a street or highway.

5. SAME—*powers of commissioners of highways in that regard.* The commissioners of highways of a town, having no title to an avenue or public highway, are powerless to grant the same to a railroad company by deed, so as to pass an exclusive right to its use, and a deed by them attempting to grant such right is void.

6. SAME—*effect of act of 1861 as to right of way of Pittsburg, Fort Wayne and Chicago Railroad Co.* The second section of the "act to perfect the title of the purchasers of the Pittsburg, Fort Wayne and Chicago railroad, and to enable them to form a corporation," approved February 8, 1861, has no reference to the mode of acquiring the right of way, and does not have any retroactive operation to validate titles to right of way.

7. SAME—*right of action to lot owner for improper use of street for railroad purposes.* A lot owner has a right of action to recover damages to his lot from the unauthorized laying of additional railroad tracks in the street fronting his lot, whereby the use of the street for all ordinary purposes of a highway is destroyed, and access to the lot is cut off, and for the creating of a nuisance by allowing stock cars to stand in the street adjoining the lot.

8. RIGHT OF WAY—*benefits to other property not properly a set-off to damages.* Where a lot is divided by a street laid through the same, benefits to one part of the property can not be set off against damage to the other part on the other side of the street by the laying of railroad tracks in the street so as to prevent access to the same, and excluding ordinary travel on the street.

9. LIMITATION—*what is color of title.* As the commissioners of highways can not be grantors of land in any case whatever, their deed for a highway is void, and can not be relied on as color of title under the Limitation law.

10. SAME—*the use must be adverse.* The grant of a joint and mutual use of a highway to a railroad corporation with the public, can not be set up under the Limitation law of 1839 as a bar, as the use in such case by the corporation is not adverse.

11. NON-SUIT—*upon the evidence.* On a trial by the court without a jury, where there is evidence tending to show a right of action, a proposition that under the evidence no recovery can be had, is properly refused. In such case the weight of the evidence is for the court.

12. PRACTICE IN THE SUPREME COURT—*what may be assigned as error.* Where it is not assigned as a ground for a new trial in the circuit court that the damages are excessive, nor any assignment of that cause for error in the Appellate Court, it can not be urged in this court that the damages are excessive.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Circuit Court of Cook county; the Hon. THOMAS A. MORAN, Judge, presiding.

Appellee, on the 6th of March, 1876, brought his action on the case, against appellant, in the circuit court of Cook county, alleging his damages at $20,000, for injuries to the west half of lot 22, School Trustees' subdivision of section 16, town 38, range 14 east, containing five acres, situated on the north-east corner of Fifty-ninth street and Stewart avenue, by reason of the location and operation of certain railroad tracks on said avenue.

The declaration contains eight counts. The first, second, fourth, fifth and seventh aver, in substance, a wrongful occupation of said avenue with four railroad tracks, so as to render said avenue impassable for vehicles, and depriving appellee of ingress and egress to and from the west half of said lot. The third count avers a wrongful carrying away of 5000 loads of earth from the said avenue, in front of said premises. The sixth count avers that the appellant unlawfully, wrongfully and negligently stored and left standing on said tracks, opposite said premises, and in close proximity thereto, a large number of hog and cattle cars, in a filthy condition, and continued so to do, thereby rendering said

premises uninhabitable, etc. The eighth count avers that the appellant so carelessly and negligently managed and operated said road, as that large quantities of cinders, dust and coal were thrown and cast upon said premises, whereby, etc. To all these counts the appellant pleaded, (1,) the general issue, and (2,) the Statute of Limitations, and to all the counts, except the sixth and eighth, it pleaded, (3,) seven years' possession and payment of taxes under claim and color of title, and (4,) *liberum tenementum,* by virtue of sec. 8, chap. 24, Rev. Stat. 1845. To the fourth plea the appellee replied specially that the land was not subject to taxation.

The cause was tried by the court without the intervention of a jury, and a verdict rendered for the plaintiff, assessing his damages at $2000. Motion for new trial was made upon the grounds:—1. The court admitted improper testimony on the part of plaintiff. 2. The court excluded proper testimony on the part of defendant. 3. The court erred in refusing the propositions of law, and each of them, submitted on behalf of the defendant. 4. The finding of the court is against the evidence. 5. The finding of the court is against the law. But the motion was overruled, and judgment rendered for $2000. An appeal was prosecuted by the defendant from that judgment to the Appellate Court for the First District, and the following errors were there assigned:

*First*—The circuit court admitted improper testimony on behalf of the appellee.

*Second*—The said circuit court rejected competent and proper testimony on behalf of said appellant.

*Third*—The said circuit court erred in refusing to hold the 1st, 3d, 4th, 5th, 8th, 11th, 14th and 15th propositions of law, and each of them, submitted by said appellant.

*Fourth*—The finding of said circuit court that said Stewart avenue, so-called, is now a public highway, was and is against the evidence, and is erroneous.

*Fifth*—The finding of said circuit court that appellant had no legal right to lay or operate any railroad track on said Stewart avenue, so-called, was and is erroneous.

*Sixth*—The said circuit court erred in overruling appellee's motion for a new trial.

The Appellate Court, on considering the case, affirmed the judgment of the circuit court. This appeal is also prosecuted by the defendant below to reverse that judgment, on the ground that the Appellate Court erred in affirming the judgment of the circuit court.

The following evidence was agreed to by stipulation of parties: "For the purpose of this suit it is agreed that the north-east quarter of section 16, town 38 north, range 14 east of the third principal meridian, in the town of Lake, in the county of Cook, aforesaid, was school land, and was subdivided by the school trustees, and a plat thereof made before the purchase of lot 22 in said section by said plaintiff; that said plat was not acknowledged or recorded; that a copy of such plat may be received in evidence in this case, with all the force and legal effect of the original, were it in existence, the defendant reserving the right to object to the sufficiency of said original plat, for any purpose, as competent evidence in this case; that the abstract of title to said lot 22, made by Handy, Simmons & Co., dated December 8, 1875, may be offered in evidence by either party without objection; that in 1858 the Pittsburg, Fort Wayne and Chicago Railroad Company, under a deed, duly acknowledged and delivered, from the commissioners of the town of Lake to it, dated May 17, 1858, entered upon a strip of land running north and south through said section 16, and on the west end of said lot 22, called Stewart avenue, or School street, sixty-six (66) feet in width, by putting down its first railroad track opposite said lot 22, and the rails of said track being west of the centre of said so-called Stewart avenue; that on March 2, 1862, this defendant, by deed from Lanier and others, shown

11—101 Ill.

in printed book hereinafter referred to, became the owner and possessor of all the right of way and property of said Pittsburg, Fort Wayne and Chicago Railroad Company, as shown by said deed; that in 1869 this defendant, in pursuance of said conveyance to it, put down a second track opposite said lot 22, and east of the centre of so-called Stewart avenue; that in 1874 the defendant, being in possession of said two railroad tracks, under said conveyance last aforesaid, put down two other tracks opposite said lot 22, in said so-called Stewart avenue, one of which was east and the other west of said two tracks already laid, and that said defendant has used and occupied all of said tracks, claiming to be the owner of said so-called Stewart avenue, by operating said tracks with its cars thereon; (all matters contained in a printed book, purporting to be copies of charters, contracts, court proceedings, etc., relating to the creation and existence of said defendant as a corporation, are correct copies of the original documents, and may be offered in evidence the same as the originals, subject to objection as to their competency or relevancy in this case;) that the defendant, the Pittsburg, Fort Wayne and Chicago Railroad Company, has, ever since May, 1858, made returns, in accordance with law, to the proper officers, of all its real estate in said county; that the whole of said so-called Stewart avenue lying in said town of Lake, has been each year so returned by said company; that taxes have been annually levied on all the real estate so returned, and that all such taxes have been duly and annually paid by said corporation since May 17, 1858, up to date, but plaintiff does not admit that any taxes have been or could be legally levied, assessed or imposed on said strip of land; that all the conditions contained in the deed of right of way over the so-called Stewart avenue, being the sixty-six feet strip of land in controversy herein, from the commissioners of highways of the town of Lake to said railroad company, dated May 17, 1858, were duly and completely

fulfilled and performed, and that said deed may be received in evidence, subject to all objections thereto."

Title in plaintiff to said lot 22 was proved, he having received a deed therefor from the Governor on the 6th day of September, 1851, and he immediately entered into possession. It was also proved said lot was subsequently divided by running a street north and south through it, called School street, and thereafter the street running north and south on the west side of the lot was called "Stewart avenue." Evidence was given tending to show damage to the marketable value of plaintiff's property, and also special injury by being cut off from access to the property, and from dust, cinders, etc., and from foul smells because of allowing stock cars to stand on the track adjacent to the property.

Messrs. Willard & Driggs, for the appellant:

The lot is a subdivision of school land owned by the State, and platted by school trustees. The plat not having been acknowledged and recorded, the title to the land in the avenue remained in the State. *City of Chicago* v. *Rumsey*, 87 Ill. 348.

The exercise of the power to lay tracks on said avenue was entered upon, and two of the tracks were actually laid before the rule under the constitution of 1870 took effect. The first proposition, therefore, was correct, under the authority of *City of Chicago* v. *Rumsey*, 87 Ill. 348; *Chicago, Rock Island and Pacific R. R. Co.* v. *City of Joliet*, 79 id. 25.

As to the third proposition: It was expressly held in *Lake Shore and Michigan Southern R. R. Co.* v. *Pittsburg, Fort Wayne and Chicago Ry. Co.* 71 Ill. 38, that the Lanier deed was color of title to the land occupied by the railway company as a right of way. The commissioners' deed to the appellant is of the same character, and is fully within the ruling of the Supreme Court in that case. *McClellan* v. *Kellogg*, 17 Ill. 498; *Hinchman* v. *Whetstone*, 23 id. 108; *Dickenson* v. *Breeden*,

30 id. 326; *Brooks* v. *Bruyn*, 35 id. 392; *Winstanley* v. *Meacham*, 58 id. 97; *Hardin* v. *Gouveneur*, 69 id. 140; *Allen* v. *Munn*, 55 id. 486.

The eleventh proposition: Sections 1 and 9 of the charter of the Fort Wayne and Chicago Railroad Company, granted by the State of Illinois, had the same effect as to Stewart avenue, in the town of Lake, as the Chicago ordinance had as to Beach street, in the city of Chicago, viz: to allow the company to properly lay and operate its tracks therein without liability for consequential damages to adjoining property. *Moses* v. *Pittsburg, Fort Wayne and Chicago R. R. Co.* 21 Ill. 511; *Chicago, Rock Island and Pacific R. R. Co.* v. *City of Joliet*, 79 id. 25.

Mr. Thomas S. McClelland, for the appellee:

1. Stewart avenue became a public highway by virtue of the act of the school trustees in 1851, and under the statutes of Illinois relating to the subdivision of school lands. Rev. Stat. 1845, chap. 98, secs. 13, 14, 15.

2. The school trustees being agents of the State in subdividing the section into lots, with spaces left open for streets or highways, it will be presumed that the public are allowed to use such spaces for public travel, and it is incumbent upon the party denying the fact of its being a public highway to overcome the presumption by proof, and show that such spaces were not intended for streets. Angell on Highways, sec. 143; *Eyman et al.* v. *The People*, 1 Gilm. 4; *Dumoss et al.* v. *Francis*, 15 Ill. 543; *Green et al.* v. *Oakes*, 17 id. 249; *Jarvis* v. *Dean*, 3 Bing. 449.

3. The duty of the town and its road officers was limited to keeping the highway in repair for the use of the public. They had no power to turn it over to the railroad company. *Stack* v. *City of East St. Louis*, 85 Ill. 377; *Peoria and Rock Island Ry. Co.* v. *Schertz et al.* 84 id. 135; *Kreigh et al.* v. *City of Chicago*, 86 id. 407; *Drake* v. *Hudson River R. R.*

*Co.* 7 Barb. 508; *Tate* v. *Ohio and Mississippi R. R. Co.* 7 Porter, (Ind.) 479; *Hynes* v. *Thomas*, 7 id. 38; *City of Pekin* v. *Winkel*, 77 Ill. 58; *Indianapolis, Bloomington and Western R. R. Co.* v. *Hartley*, 67 id. 439; *City of Pekin* v. *Brereton*, 67 id. 477; *City of Jacksonville* v. *Jacksonville Ry. Co.* id. 541; *St. Louis, Vincennes and Terre Haute R. R. Co.* v. *Copps*, id. 607.

4. The general Railroad law of 1849 prohibits railroad companies from using highways in such manner as to render them unfit for public use. Laws of 1849, p. 24, sec. 21, div. 5.

5. The highway commissioners had no power to allow the railroad to enter upon the street. All such authority is derived from the legislature. 2 Dillon on Mun. Corp. sec. 518; *Davis* v. *Mayor*, 14 N. Y. 517; *Milhan* v. *Sharp*, 27 N. Y. 619.

6. It is not within the power of highway commissioners, or even the municipal corporation itself, to permit railway companies to blockade public highways and render them impassable; and railways, notwithstanding their pretensions to act under license acquired from such authorities, will be liable to the property owners damaged thereby. *Stack* v. *City of East St. Louis*, 85 Ill. 578; *Peoria and Rock Island R. R. Co.* v. *Schertz*, 84 id. 135; *Kreigh* v. *City of Chicago*, 86 id. 410; *City of Quincy* v. *Jones et al.* 76 id. 231; *St. Louis, Vandalia and Terre Haute R. R. Co.* v. *Haller*, 82 id. 208; *City of Shawneetown* v. *Mason et al.* 82 id. 337; *Eberhart* v. *Chicago, Milwaukee and St. Paul Ry. Co.* 70 id. 347; *St. Louis, Vandalia and Terre Haute R. R. Co.* v. *Copps*, 72 id. 188; *Chicago and Pacific R. R. Co.* v. *Francis*, 70 id. 238; *Chicago, Milwaukee and St. Paul R. R. Co.* v. *Hall*, 90 id. 42; *Chicago and Iowa R. R. Co.* v. *Hopkins et al.* 90 id. 316; *Terre Haute Gas Co.* v. *Teel*, 20 Ind. 131.

7. As to measure of damages: *St. Louis, Vandalia and Terre Haute R. R. Co.* v. *Haller*, 82 Ill. 211; *Illinois Central*

*R. R. Co.* v. *Grabill,* 50 id. 245; *Ottawa Gas Light and Coke Co.* v. *Graham,* 28 id. 73; *St. Louis, Vandalia and Terre Haute R. R. Co.* v. *Copps,* 72 id. 190.

8. Appellant can not plead the Statute of Limitations in bar. The avenue was held for public use as a street, and the title was either in Reich or in the State. The property was school land. Rev. Stat. 1845, p. 104, sec. 10; *Logan County* v. *City of Lincoln,* 81 Ill. 158; *City of Alton* v. *Transportation Co.* 12 id. 59; 2 Dillon on Mun. Corp. secs. 532, 533.

·Possession must be adverse to the true owner, and exclusive. *Cook* v. *Norton et al.* 48 Ill. 20; *Weaver* v. *Wilson,* id. 125.

Appellant, up to 1874, occupied this street jointly with the public. Even if its color of title could be claimed as acquired in good faith, and even if the Statute of Limitations could run against this public highway, it could not enlarge its color, *i. e.,* to extend over any part of the street not actually occupied by it, to-wit, that part not covered by its first track. *Goewey* v. *Urig,* 18 Ill. 241; *Davis* v. *Easley et al.* 13 id. 192.

If the street was used by appellant in common with others, or with the public in general, it can not be regarded as hostile to others. *Truesdale* v. *Ford,* 37 Ill. 212; *Chicago and Northwestern Ry. Co.* v. *City of Elgin,* 91 id. 251; 61 id. 241; *I. P. and C. R. R. Co.* v. *Ross,* 47 Ind. 25.

The street in question being a public highway, and used by the public for general purposes of travel, the appellant could not acquire exclusive possession, as contemplated by the statute, and adverse to the true owner of the soil— namely, Reich or the State of Illinois. *Parker* v. *Inhabitants of Framingham,* 8 Metc. 260; *Truesdale* v. *Ford,* 37 Ill. 210; *Jackson et al.* v. *Berner,* 48 id. 203; Tyler on Ejectment, pp. 865, 883, 884; *Briggs* v. *Inhabitants of Marshfield,* 13 Pick. 240.

Railroads in public highways, without authority, are a nuisance *per se,* and continue such. 1 Dillon on Mun. Corp.

520, note; 1 Redfield on Railroads, 322; *Milhan* v. *Sharp*, 27 N. Y. 612; *Commonwealth* v. *N. and L. R. R. Co.* 2 Gray, 56.

Appellee being specially damaged thereby, may recover. *Milhan* v. *Sharp*, 27 N. Y. 627; *Lansing* v. *Smith et al.* 4 Wend. 10; Wood on Nuisance, 647; *Park* v. *C. and S. W. R. R. Co. et al.* 43 Iowa, 636; *Haynes* v. *Thomas*, 7 Porter, (Ind.) 38; *Stetson* v. *Faxton*, 19 Pick. 147; *Venard* v. *Cross*, 8 Kan. 254.

Mr. Justice Scholfield delivered the opinion of the Court:

The questions first arising upon this record requiring our consideration, relate to the exclusion of certain evidence offered by appellant, and rejected by the court.

Luther W. Crocker having testified that he was acquainted with the location of appellant's track in the town of Lake, that he had held in that town the office of overseer of highways, commencing about 1865 and continuing to the latter part of 1867, and that as such overseer it was his duty to repair roads and bridges, was asked by appellant's counsel: "As such overseer, state whether you regarded Stewart avenue as being a public highway for repairs to be made by you, as such overseer?" This was objected to by appellee's counsel, and the objection sustained. Appellant's counsel then said: "I offer to prove by this witness, that as overseer of highways he did not regard Stewart avenue as being a public highway to be repaired by him." The court held the proposed evidence incompetent, and the counsel excepted.

Albert Colvin testified, among other things: "While I was a member of the board of assessors of the town, I don't think that portion of Stewart avenue occupied by the tracks was ever used for any other purpose only as railway tracks,— only for right of way for tracks. That was the general understanding and impression among the officers of the town for a number of years,—that has been their impression from

about the time the town organized under a charter." The testimony of the witness as to the understanding and impression of the officers of the town was objected to by the counsel for appellant, and he moved to have the same stricken out, which motion the court sustained.

Josiah Gray was asked this question: "State whether it will be necessary, in the near future, to use the four tracks now on Stewart avenue solely for the running of freight and passenger trains thereon?" This was objected to by counsel for appellee, and the objection was sustained by the court. The counsel then proposed to prove by the witness that the demand of the business then required the use of those two side-tracks for main tracks, and that very soon they will be converted into main tracks, and further use for storage of cars be entirely dispensed with. Counsel for appellee objected to the reception of such evidence, and the court sustained the objection. The same witness was also asked what he had heard the officers of the road say on this subject, which was also objected to, and objection sustained by the court; and he was then asked what increase of the facilities for stocking cars was then being made by appellant in the vicinity of Forty-seventh and Fifty-ninth streets, and this also was objected to by counsel for appellee, and the objection sustained by the court.

To each of these rulings proper exception was taken, and they are now, in argument, claimed to be erroneous, and to authorize a reversal of the judgment.

The position is wholly untenable. The witnesses were not experts, and it was for them to state facts only, and for the jury to draw conclusions from those facts. Whether a thoroughfare is used, and how used, worked upon by public authorities, or abandoned, depends on certain facts only, and not on the opinions of witnesses. So, also, the use made of the street by appellant is an existing fact. What use ought to be made of it in the future, is matter of opinion about

which different men might have different notions—a mere matter of speculation. What the officers of the road said as to the intended future use, is doubly objectionable,—it is mere hearsay, and that, too, in regard to a matter of opinion. Had appellant, through its board of directors or other proper officers, actually directed a particular use of the street in the future, that would doubtless have been competent evidence; but this was not the effect of the evidence excluded. The court heard all the evidence of facts that was offered, and its ruling in the respect under consideration is free of all objection.

The next question raised in argument is, did the court err in rejecting certain propositions of law presented by counsel for appellant. By agreement of parties the cause was tried by the court without the intervention of a jury. By sec. 41 of the Practice act, (Rev. Stat. 1874, p. 780,) it is provided: "In all cases, in any court of record of this State, if both parties shall agree, both matters of law and fact may be tried by the court, and upon such trial either party may, within such time as the court may require, submit to the court written propositions, to be held as law in the decision of the case, upon which the court shall write 'refused,' or 'held,' as he shall be of opinion is the law, or modify the same, to which either party may except, as to other opinions of the court." The propositions were submitted pursuant to this provision, and are, therefore, properly before us for investigation.

The first proposition refused is as follows: "The defendant received authority from the State of Illinois to lay and operate its tracks upon and along Stewart avenue, so-called, opposite to plaintiff's said lot, and the manner in which the evidence shows that authority has been exercised gives the plaintiff no right of recovery in this case, unless thereby some physical injury has been done to said premises, or unless the plaintiff has shown a right of recovery under the sixth count of his said declaration."

The Pittsburg, Fort Wayne and Chicago Railroad Company was formed by consolidation between the Ohio and Pennsylvania Railroad Company, the Ohio and Indiana Railroad Company, and the Fort Wayne and Chicago Railroad Company, on the 6th day of May, 1856. These several corporations were organized under special charters granted by the States of Pennsylvania, Ohio, Indiana and Illinois, respectively, and the consolidation was authorized by the necessary legislation of each of these States.

The charter of the Fort Wayne and Chicago Railroad Company, granted by this State, by its fifth section provided: "The said company are hereby authorized to use and exercise all the powers for appropriating and obtaining the rights of way for the construction, maintenance and use of said road, that are given and expressed by the act entitled 'An act to provide for a general system of railroad incorporations,' approved November 5, 1849; and in case any lands so appropriated shall not be donated to the company, or in case of disagreement between the owner thereof and said company as to the fair value thereof, the sum to be paid shall be determined in the manner prescribed by said act." And the ninth section of such charter is as follows: "The said company are hereby authorized to construct their road upon or across any stream or water course, road or highway, railroad or canal, which the route of its road shall intersect; but the corporation shall restore the stream or water course, road or highway, railroad or canal, thus intersected, to its former state, or in a sufficient manner not to have impaired its usefulness."

The portion of the act of November 5, 1849, supposed to bear upon the question before us, is from section 26, and is as follows: "If any such corporation shall, for its purpose aforesaid, require any land belonging to the people of this State, or to any of the counties or towns, the General Assembly of the State, and county or town officers, respectively,

having charge of such lands, may grant such lands to such corporations for a compensation which shall be agreed upon between them, and if they shall not agree upon a sale and price, the same may be taken by the corporation as before provided in respect to other cases."

The board of commissioners of highways of the town of Lake, by an instrument made and acknowledged on the 17th of May, 1858, purported to grant, convey and quitclaim to the Pittsburg, Fort Wayne and Chicago Railroad Company, the use, for its railroad, "of the right of way over, across and along the street sometimes called 'Stewart avenue,' or 'School street,' extending north and south through the centre of the section," etc., and to "authorize, permit and allow the said company to lay its track or tracks, side-track, switches and turn-outs, in and along said street, avenue or public highway, and to operate, maintain and run its locomotives and cars over the same, and to continue to use and occupy the same, or so much thereof as may be necessary for the purpose of the business of the said railroad, forever."

Two questions are thus presented, growing out of the refusal of the court to hold the foregoing proposition of law:

*First*—Was the right to appropriate the entire use of Stewart avenue conferred upon the railroad company by the charter of "The Fort Wayne and Chicago Railroad Company?"

*Second*—If not, did the purported deed of the board of commissioners of highways of the town of Lake confer such right of use?

The ninth section of the charter of the Fort Wayne and Chicago Railroad Company is the only section that assumes to expressly confer power upon the company to construct its road along a highway; but it will be observed this explicitly requires the corporation to restore the highway to "its former state, or in a sufficient manner not to have impaired its usefulness." This is but equivalent to allowing a joint use by

the railroad company for its road and by the public for an ordinary highway, of the avenue, but specially protecting its use as an ordinary highway against any impairment. The quotation from section 26 of the act of November 5, 1849, clearly has no reference to highways. It relates to "land belonging to the people of this State, or to any of the counties or towns,"—that is to say, land which belongs to the people, counties or towns, as owner, and not such whereof the nominal title only is held in order that a prescribed public use of the land may be enforced. That this is the intention, is put beyond doubt by the fifth clause of section 21 of the same act, which, in prescribing the powers vested in the corporation, uses this language: "To construct their road upon or across any stream of water, water course, road, highway, railroad or canal, which the route of its road shall intersect; but the corporation shall restore the stream or water course, road or highway thus intersected, to its former state, or in a sufficient manner not to have impaired its usefulness." Since here is express authority for laying tracks upon, as well as across, streets or highways, carefully guarded so as to protect the public necessities, it would be absurd to suppose that the legislature intended to enact another section on the same subject, but without at all guarding the public necessities. And this view is still further strengthened by reference to section 25, which authorizes the company to acquire additional lands, where a change in the line of the highway becomes necessary by reason of an embankment or cutting for the railroad, thus showing that it was constantly in mind to preserve the highway for public use as an ordinary highway. Although, in a general sense, highways or streets, where the fee is in the State or a municipal corporation, are lands belonging to the people of the State, or to the municipal corporation, they are in legislation universally, so far as we recall, referred to as "highways," or "streets," and not as public lands. The ownership, in reality, in such cases, is

but nominal, and entirely subordinate to the public trust for which the title is held.  See *Chicago* v. *Rumsey,* 87 Ill. 348.

It results, then, that while, under its charter, the railroad corporation may doubtless have had the right to lay its tracks in Stewart avenue, that right was not an exclusive one, and could only be enjoyed in common with the use of the avenue by the public as an ordinary highway, and without materially impairing its usefulness as such.  The commissioners of highways of the town of Lake had no title in this avenue, and no authority whatever to barter or convey any interest therein.  They were invested with the care and superintendence of highways, and it was their duty to take measures to open and keep them in repair, alter and discontinue them under certain circumstances, to cause obstructions to be removed, etc.; but no title was vested in them in regard to the highways, and they had no power to make conveyances for any purpose.  (See 2 Purple's Stats. p. 1156, title "Tp. Organization," art. 22.)  Their deed was therefore a nullity.  How far it might be considered as a circumstance on the question of equitable estoppel, in regard to the tracks laid down in 1858, under the authority of *Chicago, Rock Island and Pacific R. R. Co.* v. *Joliet,* 79 Ill. 25, *Chicago and Northwestern R. R. Co.* v. *The People ex rel.* 91 id. 251, and *Martel* v. *East St. Louis,* 94 id. 67, we need not now consider, since such estoppel could, in any view, only apply to those tracks, and could not be held to authorize the laying of the two additional tracks in 1874.  Besides this, the deed is not used for the purpose of proving, with other evidence, such an estoppel.

Counsel, however, contend that authority for the execution of this instrument may be found under provisions in sec. 2 of "An act to perfect the title of the purchasers of the Pittsburg, Fort Wayne and Chicago railroad, and to enable them to form a corporation, and defining the powers and duties of

said corporation," approved February 8, 1861. The language of that section, supposed to be pertinent, is as follows: "And the said corporation shall also possess all the faculties, powers, authorities, immunities, privileges and franchises at any time held by the said Pittsburg, Fort Wayne and Chicago Railroad Company, or by any of the corporations heretofore consolidated into the said company, or conferred on the said company, the said corporations, or either of them, by an act or law of this State, or of either of the States of Ohio, Indiana or Pennsylvania, and shall have power and capacity to hold and exercise within each and every of the said States, and, so far as it may be deemed necessary to the general objects of its business, within any other of the United States, all the said faculties, powers, authorities, privileges and franchises, and all others which may hereafter be conferred upon it by or under any law of this State, or of any of the aforesaid States, and to hold meetings of stockholders and directors, and do all corporate acts and all things within any of the aforesaid States as validly as it might do the same within this State, and may consolidate with any corporation of said other States authorized to hold, maintain and operate the aforesaid railroad."

But this was enacted near three years after the purported deed of the commissioners was executed, and does not assume to have any retroactive effect for the purpose of validating titles to right of way. Indeed, we think it quite clear that it has not the slighest reference to the mode of acquiring the right of way. It relates purely, as the language unmistakably shows, to the faculties, powers, authorities, privileges and franchises which may be deemed necessary to the general objects of its business within any other of the United States. It relates to the corporation itself, and is designed to make it a unit in each and all of the States in which its line is located, but it does not assume to affect the local law in regard to the mode of acquiring title to right of way. It

has the same power and capacity to take and hold right of way in this State that it does in the other States, but the mode of acquiring right of way is obviously very different from the capacity to take and hold it. The control of streets, and the mode of regulating their use, and the mode of executing and acknowledging deeds and effecting condemnations, are matters of local law, affected, to some extent, by local constitutions, which it would doubtless be impossible to place under precisely the same law in each of these four States. At all events, we feel quite confident no such attempt has been here made. The provisions of the statutes of the other States can, therefore, have no bearing on the present question.

But counsel make the further point that the deed of the commissioners is color of title, and, being followed by possession and payment of taxes, bars appellee's action. To make a colorable title there must be a party grantor, as well as grantee. (See *Bride* v. *Watt et al.* 23 Ill. 507; *Brooks* v. *Bruyn*, 35 id. 392.) The commissioners of highways can not be parties grantors in a deed of conveyance. It may be conceded that if, under any imaginable state of case, they could be grantors, it is sufficient. But they can not be. Apart from this, however, their deed only conveys a use of so much of the street as may be necessary, thus, in effect, reserving what is not necessary for the use of the public. It would be a novel doctrine, if a railroad, by getting permission to lay a track in a street, could be regarded as holding the entire street adversely to the public. The use, here, was joint and mutual, not exclusive, and therefore not adverse. *Truesdale* v. *Ford*, 37 Ill. 210. And this will apply equally to the deeds made to Tilden and others, and by them to appellant. However effective they may be as to the right of way actually occupied by their tracks, they can not affect the part of the street not thus occupied, and which there was evidence tending to show was used and occupied by the public as an ordinary highway until the laying of the additional tracks in 1874.

Again, counsel insist the title to the street was in the public. The first two tracks were laid in the street, under authority of law, before the constitution of 1870 took effect, and for that act there can be no recovery for damages not resulting from a direct physical injury to the appellee's property, on the authority of *Chicago* v. *Rumsey*, 87 Ill. 348, and *Chicago, Rock Island and Pacific R. R. Co.* v. *City of Joliet*, 79 id. 25. This may all be true, and still the proposition have been properly refused. The laying of the two tracks, as we have seen, could not have been, under the law, and the evidence tends to show was not in fact, an appropriation of the entire street. The public had a right to, and still used, the balance of the street. That balance appellant had no right to occupy. It did, in 1874, less than two years before suit was brought, occupy it by laying thereon two additional tracks, and, as the evidence tends to show, thereby completely excluded its use for ordinary street purposes, and on that side cut off appellee's access to his lot. The proposition assumes that the two tracks laid in 1874 were lawfully laid, which we hold could not, under the uncontroverted facts, have been true. It was properly refused.

What has been said disposes, also, of the objections on account of the refusal of the second, third, fourth and fifth propositions.

The eighth proposition was properly refused, because it excludes the idea that there can be a recovery under the first, second, third, fourth or fifth counts, by cutting off access to appellee's property. This we do not understand comes within the definition of "physical injury," as used in that proposition; yet this would be damaging the property, within the meaning of the present constitution, and constitute a ground of recovery. *Shawneetown* v. *Mason*, 82 Ill. 337.

The eleventh proposition was properly refused, because it contemplates setting off benefits to one piece of property against damages done to another and distinct piece. Lot 22

of the school trustees' subdivision of section 16, had been divided into two separate tracts, by a street running through its centre from north to south, and the injuries sued for are such as have been sustained by the west half of lot 22, whereas the proposition is to offset benefits which have resulted to any part of lot 22—that is, benefits to the east half of lot 22, disconnected entirely from the west half of that lot. This has never been held admissible.

The fourteenth proposition was properly refused, because there was evidence tending to sustain a cause of action. It asserts, simply, that under the evidence there can be no recovery. There was evidence tending to authorize a recovery. Its weight was for the court.

The fifteenth and last proposition was properly refused, because it implies there can be no recovery for temporary injury, or for preventing access to appellee's property by way of Stewart avenue.

We are not allowed to look into the evidence in this class of cases, as before observed, further than to see whether there is evidence tending to sustain the cause of action, the finding of the Appellate Court upon all controverted questions of fact being final. We are, therefore, to assume that Stewart avenue was by dedication a public highway or street; that by the laying of the two additional tracks in 1874, the use of the avenue for all ordinary purposes of a highway or street is entirely destroyed; that thereby all access to appellee's lot from that side is cut off; that stock cars have been permitted to stand in the avenue, adjacent to that lot, creating a nuisance, and that appellee has been otherwise injured in the use and enjoyment of his property. Clearly, this would authorize a recovery for some amount, and the question of what amount is not before us. Motion for new trial was made, and causes therefor assigned in writing, but it was not therein alleged that the damages are excessive. Errors were assigned in the Appellate Court, but

12—101 Ill.

no error was therein assigned on the ground that the damages are excessive.

In *Emory* v. *Addis,* 71 Ill. 273, we held, when excessive damages are not assigned as a ground for a new trial in the circuit court, nor for error in this court, the appellant is not in a position to have the question reviewed; and in *Thayer* v. *Peck,* 93 Ill. 357, we held, if a defendant fails to assign for error in the Appellate Court that the judgment was too large, he would not be allowed to present that question in this court. There was also like ruling in *Diversey* v. *Johnson, Admx.* 93 Ill. 547; *Page et al.* v. *People ex rel. etc.* 99 id. 418; *Litchtenstadt* v. *Rose,* 98 id. 643.

Perceiving no cause to disturb the judgment of the Appellate Court, it is affirmed.

*Judgment affirmed.*

Mr. JUSTICE DICKEY: I do not concur in the above.