THE CHICAGO, BURLINGTON AND QUINCY RAILROAD COMPANY

*v.*

THE CITY OF QUINCY.

*Filed at Springfield March 30, 1891.*

1. USE OF STREETS—*for railroad purposes—powers of municipal corporations—contract—improper use, remedy by injunction.* Where the legislature has committed a portion of its sovereignty to municipalities, such as cities, towns and villages, in respect to streets, highways and public grounds within their limits, such municipalities are thereby invested with the authority of the State in this respect, and may maintain a bill in equity to restrain the obstruction of streets within their limits.

2. A provision in a city charter giving the city council exclusive power over its streets, will authorize such city council to confer upon a railroad company the right to use the streets with its track for railroad purposes.

3. Where a city, under express legislative authority, fairly enters into a contract with a railway company, whereby the use of certain parts of streets is granted to the latter for its main and side-tracks, switches, frogs, etc., with the right in the company to grade and improve such parts of the streets as it may desire, subject to the restriction that the improvement of the streets shall be so made that wagons, drays and other vehicles may cross over the same conveniently, the courts will enforce such contract; and if the railway company, or its successor, afterward attempts to erect obstructions on the parts of such streets so as to interfere materially with the passage of vehicles over the same, a court of equity will enjoin such attempted acts, but will not enjoin acts permitted by the contract.

APPEAL from the Appellate Court for the Third District;— heard in that court on appeal from the Circuit Court of Adams county; the Hon. WILLIAM MARSH, Judge, presiding.

Mr. J. F. CARROTT, and Mr. O. F. PRICE, for the appellant:

Equity never interferes where there is a plain and adequate remedy at law. *Schurmeier* v. *Railroad Co.* 8 Minn. 113; *Mills* v. *Parlin,* 106 Ill. 60; *Hodgkinson* v. *Railroad Co.* 4 Edw. Ch. 411; *Goodell* v. *Lassen,* 69 Ill. 145.

A court of chancery will not assume jurisdiction to control the use of a street in a city by a railroad company, or of the manner in which the track is laid, etc. *Railroad Co.* v. *People,* 92 Ill. 170; *Mills* v. *Parlin,* 106 id. 60; *City of Waterloo* v. *Railway Co.* 71 Iowa, 193.

To warrant the court in issuing an injunction, strong *prima facie* evidence of the facts on which the complainant's equity rests must be presented to the court, as well as a full and candid disclosure of all the facts. 1 High on Injunctions, sec. 11; 2 High on Injunctions, sec. 1575; 2 Joyce on Injunctions, 1034; *Reddall* v. *Bryan,* 14 Md. 444; *Johnston* v. *Glenn,* 40 id. 207.

A party is precluded from an injunction after long acquiescence. Kerr on Injunctions, 348; Hilliard on Injunctions, 24; 1 High on Injunctions, secs. 618, 643; *Carpenter* v. *Carpenter,* 70 Ill. 457; *Vail* v. *Mix,* 74 id. 128; *Higbee* v. *C. & A. R. & T. Co.* 5 C. E. Green, 442; *Greenhalgh* v. *Railway Co.* 1 Ry. Cas. 680; 3 Myl. & C. 784.

Estoppel *in pais* applies to a municipal corporation. *Railway Co.* v. *People,* 91 Ill. 254; *Martel* v. *East St. Louis,* 94 id. 69.

For an obstruction to a public highway an injunction is not a favored remedy, whether sought by the public or an individual. *Irwin* v. *Dixon,* 9 How. 10.

The fee of the streets in Quincy, Illinois, being in the city, it follows that the city of Quincy had full authority to author-

ize the railroad company to lay down railroad tracks in said streets, and to operate engines and cars thereon. *Stetson* v. *Railroad Co.* 75 Ill. 74; *Patterson* v. *Railroad Co.* id. 588; *Railroad Co.* v. *Schertz*, 84 id. 135; *Truesdale* v. *Grape Sugar Co.* 101 id. 561.

Mr. W. G. Feigenspan, City Attorney, and Messrs. Carter, Govert & Pape, for the appellee:

The jurisdiction of a court of equity to restrain by injunction, at the instance of a city, the placing of encroachments or obstructions on public streets and highways, is well established. *Railway Co.* v. *Chicago*, 96 Ill. 620; *Jacksonville* v. *Railway Co.* 67 id. 540; *Burlington* v. *Schwarzman*, 52 Conn. 181; 52 Am. Rep. 571; *Inhabitants of Watertown* v. *Mayo*, 109 Mass. 315; *Cheek* v. *Aurora*, 92 Ind. 107; *Taunton* v. *Taylor*, 116 Mass. 254; *Cobb* v. *Railway Co.* 68 Ill. 233; Dillon on Mun. Corp. (3d ed.) sec. 405, note 2; secs. 659, 660, notes 1, 4; sec. 662, note 1; sec. 706, note 1; High on Injunctions, secs. 819, 768, and cases cited.

Although it is a legitimate use of a street of a city to permit railroad tracks therein, yet such use must be consistent with the public interests in them, and neither a city nor the State legislature can confer upon any one a right to their exclusive use, or a right to so use them as to hinder or obstruct the public in a concurrent use of them. *Railroad Co.* v. *Belleville*, 20 Bradw. 580; *Jacksonville* v. *Railway Co.* 67 Ill. 540; *Stack* v. *East St. Louis*, 85 id. 377; *Railway Co.* v. *Reich*, 101 id. 157; *Dock Co.* v. *Garrity*, 115 id. 155; *City of Morrison* v. *Hinkson*, 87 id. 587; *Quincy* v. *Jones*, 76 id. 231.

While in some cases it may, in the discretion of the court, be sufficient ground for refusing a preliminary injunction that the complainant has not fully disclosed the rights of the defendant, or given notice of the application, yet such failure is not error for which a decree granting an injunction on the

final hearing will be reversed.   1 High on Injunctions, sec. 11, and notes; *Brown* v. *Luehrs,* 79 Ill. 575.  .

The decree granting the injunction is not too broad.   It will be construed with reference to the claim of right, and the fair construction of the injunction is, that the defendant shall not so obstruct the streets in question, or so grade, improve or use them in operating its road, as to prevent their unobstructed use by the public as public thoroughfares.   *Quincy* v. *Bull,* 106 Ill. 337.

Mr. Justice Craig delivered the opinion of the Court:

This was a bill in equity, brought by the city of Quincy, against the Chicago, Burlington and Quincy Railroad Company, to enjoin it from depositing dirt, cinders and other material upon those portions of Broadway and Spring streets lying west of the west line of Front street.   A hearing was had on the pleadings and evidence, and the court rendered a decree in favor of the complainant, as prayed for in the bill. The decree, on appeal, was affirmed in the Appellate Court.

The city of Quincy is bounded on the west by the Mississippi river and the Quincy Bay, navigable waters.   In 1836 Broadway and Spring streets were laid off and platted as public streets, extending from the eastern limits of the city west to the Mississippi river.   The mouth of Quincy Bay is near the foot of Broadway, extending from that point north near three miles.   There is no street running north and south along the bank of the river and bay.   Front street runs north and south, parallel with the river, but there is a strip of land some four hundred feet in width between the street and the river, occupied by the railroad company with its tracks, and the object of the bill was to prevent any obstruction being placed in Broadway and Spring streets west of Front street, so that travel should not be interrupted along those streets from the river to the eastern portion of the city.

It is first claimed in the argument that the acts complained of amount to a mere trespass, and that a court of chancery will not assume jurisdiction, by injunction, to prevent the placing of obstructions in a public street. The same question was raised in *Metropolitan City Ry. Co.* v. *City of Chicago*, 96 Ill. 620, and it was there held, that where the legislature has committed a portion of its sovereignty to municipalities, such as cities, towns and villages, in respect to streets, highways and public grounds within their limits, they are invested with the authority of the State in this respect, and may maintain a bill in equity to restrain obstruction of streets within their limits. The question presented falls clearly within the rule announced in the case cited, and any further discussion of it here is not deemed necessary, as our views are there fully stated.

It is also claimed that the decree rendered by the court was not authorized by the evidence. In order to properly dispose of this question it will be necessary briefly to refer to a portion of the evidence incorporated in the record. The charter of the city of Quincy conferred upon the city council exclusive power over the streets of the city, and under such a provision in a city charter it has been held in a number of cases, that the city council have full power and authority to confer upon a railroad company the right to use the streets, with its tracks, for railroad purposes. (*Murphy* v. *City of Chicago*, 29 Ill. 280; *Moses* v. *Pittsburgh, Ft. Wayne and Chicago Railroad Co.* 21 id. 516.) But the right to occupy and use the streets, in this case, does not depend on the general power conferred upon cities and towns to control and regulate streets and the use thereof.

On the 17th day of January, 1855, the legislature passed an act entitled "An act amendatory of and supplemental to an act entitled 'An act to incorporate the city of Quincy,' approved February 3, 1840." Section 26 of this act empowers the city to sell and convey to the Northern Cross Railroad Company the premises known as the "public landing," bounded on

the east by Front street, and on the west by the Mississippi river, in exchange for other premises in said city, bounded on the west by the Mississippi river. Section 28 provided that the arrangements theretofore made between the city and railroad company, conferring on the company the right to use certain streets for right of way, were thereby confirmed. Section 29 of the act is as follows: "That the city of Quincy and the Northern Cross Railroad Company are hereby authorized and empowered, on such terms and for such considerations as the said parties may agree upon, to make and conclude any contracts and agreements for the establishing, opening or abolishing any part of any streets, avenues or alleys within the jurisdiction of said city, adjoining or dividing any property which is or may be owned and used by the said company for the purpose of their business at Quincy, and to lease or convey the same to the said company in fee, or to otherwise secure to said company the occupation and enjoyment thereof, exclusive or otherwise, in such manner and for such use and purpose as may be agreed upon."

Under this act a deed was executed on the 25th day of July, 1855, by and between the Northern Cross Railroad Company, party of the first part, and the city of Quincy, party of the second part, and duly executed and acknowledged by each of said parties, whereby, as declared in the deed, the "party of the first part, for the consideration hereinafter mentioned, hereby release and surrender up to the said party of the second part all rights and privileges heretofore acquired by the said parties of the first part from the said party of the second part to erect any building or buildings in Front street, in said city, south of Broadway street, and also all rights and privileges heretofore acquired by the said parties of the first part from the said party of the second part to make and use any railroad tracks whatever on or over that part of said Front street which lies south of the north line of Broadway, or the public landing in said city which lies south of a line running due

west from the south-west corner of lot 4, in block 6, in the original town (now city) of Quincy, to the Mississippi river, and release to the said party of the second part all of their right and interest in that piece of ground lying east of Twelfth street, in said city, and west of the eastern limits of said city, which would be occupied by said Broadway street if the same was extended to the eastern limits of said city, on certain conditions and reservations." The deed contained other grants and covenants by the party of the first to the party of the second part, and then provided: "In consideration whereof, the said party of the second part hereby conveys to the said party of the first part all of that part of Front street which lies north of a line across the same fifty feet south of Oak street, and south of a line parallel with and six hundred and sixty feet north of the north line of Pease's addition to the said city of Quincy; also all that part of said Oak street which extends from the west line of Olive street to the Mississippi river, and also that part of the alley extending along the north line of blocks 5 and 6, in Pease's addition, (known as 'Green alley,') which lies west of Olive street,—to have and to hold the same, together with all and singular the privileges and appurtenances thereunto belonging, to the said parties of the first part, their successors and assigns forever." The deed also contained this provision: "And the said party of the second part also grants to the said parties of the first part the right and privilege of grading, improving and using that portion of Broadway street which lies west of the west line of Front street, and also that portion of Spring street which lies west of the west line of Front street, to the Mississippi river, to suit the convenience of said company, and to construct thereon such railroad tracks, side-tracks, switches and frogs as the said parties of the first part may desire, and to use the same in the passage of machinery and cars to and fro, or in permitting them to remain thereon, as the convenience of the company may require in the transaction of their business, but·

without any right to erect on said parts of said streets any building or buildings, or otherwise to appropriate any part thereof to private use, except as hereinbefore stated; and these portions of Broadway and Spring streets, and all other streets in said city not herein conveyed, in which any rights and privileges are herein granted to said parties of the first part, shall be by them so granted and the railroad tracks so laid that carriages, wagons, drays and vehicles of all kinds may conveniently cross the same." The deed also contained other grants on the part of the city to the railroad company, but it will not be necessary to refer to them here. The execution of the deed was approved by the city council of the city of Quincy.

The defendant, the Chicago, Burlington and Quincy Railroad Company, by *mesne* conveyances, acquired all the right, title and interest of the Northern Cross Railroad Company in and to the property, and succeeded to all of its franchises and privileges, and, soon after the year 1855, went into the possession, laid its tracks thereon, and has occupied the same under the provisions of the deed, for railroad purposes, ever since.

The power of the city of Quincy to grant the railroad company the right to occupy and use Broadway and Spring streets is not questioned or denied. The circuit court, however, held that the railroad company was grading the streets in a manner not authorized by the deed under which it occupied the streets, and rendered the following decree:

"The Chicago, Burlington and Quincy Railroad Company, its officers, agents, attorneys, servants and employes, be and they are, and each of them is, hereby perpetually enjoined and restrained from depositing any stone, earth, cinders, gravel or other materials upon, or from so erecting any embankment or other obstruction upon, and from so grading, said parts of Broadway and Spring streets, or either of them, extending from said Front street to the Mississippi river, or the said bay, or from so laying any railroad tracks thereon, and from

otherwise so appropriating the said parts of said streets to defendant's use, and from so obstructing the same as to prevent the free use and enjoyment thereof by the public, as public streets of said city, to and from the said river or body of water, or in such manner as to prevent the landing of steamboats and other watercraft plying upon said river and body of water, or in such a manner as to destroy and impair the use of the same as public levees or landings, or in such a manner as to prevent wagons, vehicles, carriages or the public from crossing and re-crossing continually along said parts of Spring and Broadway streets west of Front street, to and from the said river or body of water, or in such a manner as to prevent the citizens of Quincy and the public at large from having the free and unobstructed use of said parts of said streets as public streets in said city of Quincy, or from interfering with the complainant in the use thereof as such public streets, and from the erection and construction of the said obstruction or embankment upon and across said parts of said Spring and Broadway streets as aforesaid, mentioned in said bill and hereinbefore mentioned, and from otherwise obstructing or further obstructing said parts of said Broadway and Spring streets, and either of them, in any manner so as to prevent or hinder the free and convenient use of said parts of said streets by the complainant and the citizens of said city of Quincy, and the public at large, as such public streets of said city."

It is manifest that the decree can not be sustained. The deed heretofore referred to is the contract which must govern the city of Quincy and the railroad company in regard to the manner in which the railroad company may grade and use that portion of Broadway and Spring streets which lies west of Front street. The terms of that instrument are plain and unambiguous. Under the deed, the right is conferred upon the railroad company to grade, improve and use that portion of Broadway and Spring streets which lies west of the west line of Front street, to the Mississippi river, in such a manner

as may suit the convenience of the company. The company also has the right to construct thereon such railroad tracks, side-tracks, switches and frogs as it may desire, and to use the same in the transaction of its business as the convenience of the company may require. These are the powers conferred. Now, what are the restrictions or limitations imposed? First, the railroad company has no right to erect on the parts of streets in question any building or buildings; second, said parts of streets are not to be appropriated to any private use, except, however, the company may appropriate the streets to the use heretofore mentioned; and third, the streets shall be so graded by the company, and the tracks so laid, that carriages, wagons, drays and vehicles of all kinds may conveniently cross the same. These are the only limitations or restrictions placed on the company, and if the company, in occupying the streets, undertakes to disregard these three duties imposed by the contract, it may be enjoined in that regard, but not otherwise. The company is at liberty to grade and improve the parts of streets as it may desire, but the improvement must be so made that wagons and vehicles of all kinds may cross over the same conveniently. The occupation of the streets by the railroad company under the powers conferred by the deed, will, of necessity, to some extent obstruct the free use of the streets, so that the public will not have that free use thereof which would have existed had not the contract for the occupation been made between the city and the company. But that is a matter which does not enter into the decision of this controversy. The legislature saw proper to confer the power on the city to make the contract with the railroad company which was made. The city represented the public, and the contract was fairly made, and it must be enforced as it was made.

The judgment of the Appellate Court and decree of the circuit court will be reversed, and the cause remanded to the circuit court, with directions to enter a decree enjoining the

railroad company from grading the parts of streets in such a manner as will prevent carriages, wagons, drays and vehicles of all kinds from conveniently passing over said parts of streets to the water's edge, and not otherwise.

*Judgment reversed.*

Mr. JUSTICE MAGRUDER, dissenting.