The Atchison, Topeka & Santa Fe Railway Company, et al., v. William Maegerlein, et al.

Gen. No. 11,306.

1. INJUNCTION—*when, does not lie at suit of property owner to compel abatement of public nuisance.* An injunction does not lie at the suit of a private owner to compel the removal of an embankment upon a public street on which his property is located, erected and maintained by a railroad company under a claim of ordinance right; such an action must be instituted either by the attorney general or the municipality in which such alleged nuisance exists, and the remedy of such private owner is by an action at law to recover damages.

Proceeding to restrain maintenance of nuisance, etc. Appeal from the Circuit Court of Cook County; the Hon. EDWARD F. DUNNE, Judge, presiding. Heard in this court at the October term, 1903. Reversed and remanded with directions. Opinion filed May 26, 1904.

**Statement by the Court.** August 21, 1902, appellees, who were complainants below, filed a bill against appellants and others, alleging therein (as amended) that they are the owners of certain lots fronting on Mary street, a public highway in the city of Chicago; that said street extends from Archer avenue to Hillock street, and except for the grievances hereinafter mentioned their said property would have easy access to the Chicago river and other parts of the city; that the appellants, the railroad companies, have and each of them has, without authority of law, constructed and are maintaining across Mary street a solid embankment of earth of the width of one hundred and sixty feet and of the height of twelve feet above the grade of the street, thus wholly closing the same and cutting off access to and over it; that " said defendants, pretending to do so under and by virtue of a certain ordinance of the city of Chicago, hereinafter referred to, began the closing of said Mary street by throwing earth across the same about the second day of July, 1901, and about the same time closed the other streets lying immediately to the east and west of said Mary street, by throwing earth therein. Said work was, however, discontinued in said Mary street, until July 7, 1901,

A., T. & S. F. Ry. Co. v. Maegerlein.

at which time said defendants, acting under the pretended authority of the ordinances aforesaid, renewed the work of elevating their said railroad tracks. Complainants allege that when said Mary street was first closed to public travel, that is to say, during the month of July, 1901, complainants remonstrated with one Major Vaughn, who was in charge of the work then and there being done, on behalf of said railroad companies, and acted as superintendent on their behalf, and complainants allege that said superintendent stated to them that the closing of said street was only temporary; that the method of filling in said street had to be adopted in order to make the grade to Halsted street, one of the streets of the said city of Chicago lying some blocks to the west of Mary street, and that said Mary street would be opened as soon as said grade was established. Complainants further allege that all of the iron work on other subways to be constructed along the lines of road of said defendant railroads, in accordance with the ordinances hereinafter referred to, and all obstructions created by filling in of earth, have been removed; and all of the subways provided for by said ordinance have been made, and all of the work thereon fully completed, except, however, that no work was done upon the subway in Mary street, and that the filling under said tracks which was alleged to be but temporary, has been made in a permanent and substantial manner, in the same manner, in fact, as all of the embankments along the lines of said railroads where no subways are intended to be constructed; that said defendant railroads allege and claim that the work at Mary street is fully completed, and the city authorities of said city of Chicago have fully accepted the same as complete, and as having been done and finished in compliance with the requirements of the ordinances hereafter referred to. Your orators further show that all of the work of every kind in connection with the subway in Stark street, which is one block to the west of Mary street, was finished and completed on June 1, 1902, and that the subway in Quarry street, one block to the east of Mary street, was all finished

on or before July 15, 1902, and that no work whatever in connection with the elevation of said tracks, nor any work whatever made necessary by the aforesaid ordinances of the said city of Chicago, has been done by said defendant railroad companies since about July 15, 1902, and that said embankment across said Mary street is of a permanent and substantial character, and defendant railway companies intend that the same shall forever remain a permanent obstruction to said Mary street, and have no intention whatever to build or construct a subway in said Mary street as is in said ordinances, hereinafter referred to, provided;" that May 22, 1899, an ordinance was passed by the City Council of Chicago, (exhibit 1), which was amended June 26, 1899, (exhibit 2), and duly accepted by all the railroad companies, except the Chicago & Alton Railway Company, within the time in said ordinance specified; that June 15, 1900, a further ordinance was passed by said City Council, (exhibit 3), which provided that the Chicago & Alton Railway Company should change its roadbed in conjunction with the changes to be made in the roadbeds of the other companies under the prior ordinances, and that the Chicago & Alton Railway Company accepted this ordinance. Each of said ordinances is made a part of the bill. That said ordinances required that said railroad companies should construct a subway in Mary street under said railroads; but that they have neglected and refused to build such subway, and have built said solid embankment across Mary street, and have ever since maintained the same, thereby creating a nuisance and appropriating the highway to private purposes. That upon his premises, which are adjoining said embankment, said Maegerlein was and had been for many years engaged in the manufacture of "racking hose" made from the esophagi of animals, and that by reason of said embankment shutting off access to the sewer system of said city, his premises have become unfit for such use, to his loss of $5,000, and unless he shall obtain relief he must move both his factory and his residence to some other part of the city. That by the erection of said em-

bankment appellees are. placed in a pocket, and they have
and each of them has been permanently and irreparably in-
jured in a manner different from and in excess of the injury
sustained by the general public.    Prays that the defendants
may answer; that said embankment may be declared to be a
purpresture and a public nuisance, and an appropriation of
a public highway for solely private purposes, and that the
same may be removed and abated, and that the court may
compel said defendants and each of them to restore said
street to the condition the same was in prior to the erection
of said embankment, and for such other relief as the nature
of the case may require.

Appellants severally demurred to the bill as amended.
The court, on May 13, 1903, entered the following decree :

The demurrers to the bill as amended are overruled, and
the defendants required to answer; but the defendants re-
fusing so to .do, and declaring their intention to abide by
their said demurrers, the court finds the facts to be as the
same are alleged in the bill and the amendments thereto,
and the equities to be with the complainants.

It is ordered, adjudged and decreed " that said complain-
ants, and each of them, do have the relief prayed for by them
in their said bill of complaint, and the amendments there-
to, and that the said defendants, Atchison, Topeka and
Santa Fe Railway Company of Chicago, Chicago, Madison
and Northern Railway Company, and Chicago and Alton
Railway Company, and each of them, are hereby ordered
and directed to at once proceed with the construction of
the subway in Mary street, which shall be constructed by
said defendants, either jointly or severally, in the manner
provided by said ordinances of the city of Chicago, as the
same are herein found to be by the court, and that the
work of constructing said subway shall be .completed by
said railroad companies on or before the 13th day of June,
1903;" that said defendants, their officers and agents, be
perpetually enjoined from maintaining said purpresture and
nuisance in said Mary street, and from operating trains
thereover, unless the same shall be carried across on a bridge
to be constructed in accordance with the ordinances, and
unless the same shall be completed within the time in the
decree specified; that within thirty days the defendants are
ordered to remove said embankments and filling therein, so

that a clear head-room of eleven feet under the roadbed of defendants shall be left; that in the event of their failure so to do, complainants may apply for a writ of assistance; that complainants recover their costs.

To the entry of which decree the railway defendants duly excepted. Appellants then perfected this appeal.

SEARS, MEAGHER & WHITNEY, for appellants; JAMES F. MEAGHER, of counsel.

FELSENTHAL & FOREMAN, for appellees.

MR. JUSTICE BALL delivered the opinion of the court.

It will be seen by an examination of the three ordinances which are made parts of the bill, that they are track elevation ordinances, by which the several railroad companies are ordered and directed to elevate the plane of their roadbeds within the limits of the city to varying heights as prescribed in said ordinances; that subways are provided for at certain designated streets, of which Mary street is one; that all of such work done upon or in connection with the public highways of the city shall be done and performed under the superintendence and subject to the inspection and approval of the commissioner of public works; that said railroad companies in the prosecution of said work may obstruct temporarily any public street to such an extent and for such a length of time as may be approved by said commissioner, and may erect temporary structures and false works in any street during the construction of their elevated tracks, subject to the like approval of said commissioner; that the plans for such track elevation shall be submitted to said commissioner for his approval; that said work shall be commenced on or before August 1, 1899 (except that the time of commencement for the Chicago & Alton Railway Company is fixed at May 1, 1900), and shall be prosecuted continuously with all practical diligence, and shall be fully and finally completed on or before the 31st day of December, 1903; and that the railroad companies shall not be required to pay any damages to adjacent prop-

erty caused by the passage and enforcement of the ordinances, but the city agrees to adjust and to pay such damages.

This great public work of elevating the railway tracks in the city of Chicago, thus eliminating grade crossings and thereby lessening if not preventing the maiming or killing of persons by passing trains and greatly facilitating public travel, should not be stopped by appellees, if all their property rights can be otherwise protected, or the deprivation of them can be adequately compensated.

Appellees have mistaken the remedy for the grievances alleged in their bill of complaint. The acts which have depreciated their several premises were done and completed before the bill was filed. Hence the cases of Earll v. Chicago, 136 Ill. 277, and Field v. Barling, 149 Ill. 572, in each of which a court of equity granted relief as against a threatened injury, are not here in point. In this case appellees seek to have the embankment declared a purpresture and a public nuisance, and to have the same abated. Such an action cannot be brought by a private person. It must be instituted by the Attorney General, by the State's Attorney, or by the City of Chicago. In other words, it is a public action, and must therefore be brought by public authority. Patterson v. Ry. Co., 75 Ill. 588; Doane v. Lake St. El. R'd Co., 165 Ill. 510; People v. Harris, 203 Ill. 272.

The damages, if any, to the property of appellees by reason of the recited acts of appellants are capable of being estimated in money and recoverable in an action of law. Having a complete and perfect remedy at law, they cannot come into a court of equity for relief. The cases are many where, under similar circumstances, an adequate remedy at law has been had. Among these cases are Ottawa v. Graham, 28 Ill. 73; I. C. Ry. v. Grabill, 50 Ill. 241; C. & P. Ry. v. Stein, 75 Ill. 41; Decatur v. Howell, 92 Ill. 19; P., Ft. W. & C. Ry. v. Reich, 101 Ill. 157; Rigney v. Chicago, 102 Ill. 64; C. & W. I. Ry. v. Ayres, 106 Ill. 511; L. E. & W. Ry. v. Scott, 132 Ill. 429; C. M. & St. P. Ry. v. Darke, 148 Ill. 226; C. & A. Ry. v. Robbins, 159 Ill. 598.

In Patterson v. The C. D. & V. Ry. Co., 75 Ill. 588, appellant filed a bill to enjoin the use by appellee of a side track which it had laid down across the public highway on which his house fronted, and then ran alongside his dwelling and within three or four feet of it. After cross·ing the street the track lay on the property of the appellee. A demurrer to the bill was sustained and the bill was dismissed. Upon appeal the Supreme Court say : "So far as respects the claim on account of damage, the demurrer was rightly sustained, according to a decision of this court at the present term in the case of Stetson v. The Chicago & Evanston R. R. Co., *ante*, p. 74, where it was held that, in case of a claim of consequential damages to land on account of the operation of a railroad, where no part of the land claimed to be affected was taken for the use of the road, a bill in chancery would not be entertained to enjoin the use of the railroad until such damages could be paid or assessed. We regard that decision as covering the whole ground of the present bill, as respects damages, and it must control." Upon the proposition that the ordinance, under which appellee claimed to have laid this track, did not give appellee the right to cross the street in question, the court says : "Without undertaking any decision of this question, it is sufficient to say that the fee of the streets is in the city, and it has the power to control and regulate their use, and any such excess of authority in the use of a street as is here claimed, must be left to be redressed by the public authority; and equity should not, in such a case, at the suit of a private individual, enjoin the operating of a railroad."

In the Stetson case, *supra*, the court announce : "It may be regarded as the settled law of this state, an owner of an abutting lot cannot prevent the use of a street for a railway when such use is permitted by the city and is authorized by an act of the legislature." They also say that the damages, if any, are consequential and arise from the lawful use of the adjoining street, in which complainant has no interest except an easement in common with the

public; that the constitutional provision is, "private property shall not be taken or damaged for public use without just compensation. Such compensation, when not made by the state, shall be ascertained by a jury as shall be prescribed by law."

In Doane v. Lake St. El. R'd Co., 165 Ill. 510, the same doctrine is laid down, and many cases are cited sustaining the proposition that "Where the fee of the street is in the city, such damages as the abutting owner may suffer from the laying of a railroad track in the street are merely consequential, so far at least as they affect the property abutting on the street. In such case, as there is no physical taking of the land, injunction will not lie to enjoin the taking, the remedy being an action at law for damages." That the injury done to the complainant is depreciation of his property, "which is capable of being estimated in money and recoverable in an action at law, therefore a court of equity will not interfere by injunction." * * * That "Where the use of a street has been legally authorized, as held in McCartney v. Chicago & Evanston Railroad Co., 112 Ill. 611, Hunt v. Horse and Dummy Railway Co., 121 Ill. 638, Chicago, Burlington & Quincy Ry. Co. v. Quincy, 136 Ill. 489, and Metropolitan City Ry. Co. v. City of Chicago, 96 Ill. 620, an information in chancery by the Attorney General or State's Attorney, on behalf of the People, or, as in the last named case, a bill for injunction by the city, affords a proper and complete remedy." * * * "There is a certain, adequate and complete remedy at the suit of the public whenever there is a threatened or actual unlawful obstruction of the streets and highways, and, as we think, an equally certain, adequate and conclusive remedy to the abutting owner for all his damages, present and prospective."

In People v. Harris, 203 Ill. 272, appellee petitioned for a writ of mandamus praying that the mayor and aldermen of the city of Champaign and the owners of certain property be directed to remove a certain bay window which encroached upon the public highway. The court sustains

the contention of appellee, saying: "In this case the individual is not undertaking to recover damages, nor can it be said that an individual is complaining, but it is the public complaining though one of its citizens."

The law of this state upon the matters at issue in the present action is laid down in these cases, and by them we are governed.

It is unnecessary to consider the other contentions of appellants.

The decree of the Circuit Court is reversed, and the cause is remanded with directions to dismiss the bill for want of equity.

*Reversed and remanded with directions.*