# JOHN W. DOANE

## *v.*

# THE LAKE STREET ELEVATED RAILROAD COMPANY.

*Filed at Ottawa October 16, 1896—Rehearing denied March 12, 1897.*

1. ELEVATED RAILROADS—*pillars supporting superstructure are not an unwarranted obstruction of street.* The pillars used to support the superstructure of an elevated railroad are not an unwarranted obstruction of the street, as they are erections which aid· and facilitate the use of the street for purposes of travel and convenience.

2. SAME—*permitting construction of elevated railroad on public street imposes no new servitude.* Permission given by a city council to a company to construct and operate an elevated railroad upon a public street the fee of which is in the city, does not impose a new servitude on such street nor subject it to an unlawful use.

3. SAME—*an illegal use of street must be redressed by public authority.* Where the use of a street for construction and operation of an elevated railroad has not been legally authorized, the only remedy therefor is an information in chancery filed by the Attorney General or the State's attorney in the name of the People, or a bill for injunction brought by the city.

4. INJUNCTION—*abutting owner cannot enjoin construction of railroad legally authorized.* The legally authorized construction of an elevated railroad upon a public street the fee of which is in the city will not be restrained by injunction at the suit of an abutting owner, as he has a complete remedy at law by an action for damages.

5. SAME—*abutting owner cannot enjoin illegal construction of elevated railroad in street.* A court of equity will not, upon the allegation of an abutting owner that the ordinance authorizing the construction of an elevated railroad in a public street is illegal, enjoin the construction until the question of the illegality of the ordinance can be determined, but will remit him to his remedy at law.

6. SAME—*Frontage act confers on abutting owners no new right.* Neither the Frontage act, (Laws of 1883, p. 126,) nor clause 90 of section 1, article 5, of the City and Village act, (Laws of 1887, p. 115,) which require the consent of the owners of more than one-half the frontage before the council can act, confers any new rights on abutting owners by which they can enjoin the construction of a railroad authorized by the council without the required consent.

7. DAMAGES—*present and future damages of abutting owner recoverable in one action.* An abutting owner suing an elevated railroad company unlawfully using a public street, for damages resulting to his property from the road's construction and operation, may recover

in one action both present and future damages, as the injury is continuing and permanent, notwithstanding the road is unlawful.

8. ESTOPPEL—*elevated railroad estopped to question validity of ordinance under which it is operated.*  An elevated railroad constructed and operated under an illegal ordinance, when sued for damages by an abutting owner, cannot defend on the ground that the road is liable to abatement as a nuisance, but, having availed itself of the grant of authority, is estopped to question its validity.

MAGRUDER, C. J., dissenting.

*Doane* v. *Lake Street Elevated R. R. Co.* 60 Ill. App. 471, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. RICHARD S. TUTHILL, Judge, presiding.

FRANKLIN P. SIMONS, for appellant:

An abutter may maintain an action for injury to his street easement of light and air from the construction of the road.    Booth on Railways, sec. 190, and notes; *Hine* v. *Railroad Co.* 36 Hun, 293; *Pysuro* v. *Railroad Co.* 13 Daly, 220; *Glover* v. *Railroad Co.* 51 N. Y. Sup. 1; *Patten* v. *Railroad Co.* 3 Abb. N. C. 306.

An abutting owner's right is not a mere right to light and air and passage, under the common law.    It rests on grant and covenants.    The jurisdiction of equity to protect by injunction a legal right of this character from continuous infringement is well established.    *Earll* v. *Chicago,* 136 Ill. 285; *Zearing* v. *Raber,* 74 id. 409; *Newell* v. *Sass,* 142 id. 104; *Field* v. *Barling,* 149 id. 556; *Schworer* v. *Market Ass.* 99 Mass. 285; *Salisbury* v. *Andrews,* 128 id. 336.

The question is not as to the amount of damage, but as to the right, and the mere fact of a threatened continuous infringement of this right gives a court of equity jurisdiction.    *Story* v. *Railway Co.* 90 N. Y. 123; *Lake View* v. *LeBahn,* 120 Ill. 92; *Field* v. *Barling,* 149 id. 556; *Peoria* v. *Johnson,* 56 id. 45.

An abutting property owner can maintain a bill for injunction against a railroad company attempting to con-

struct a railroad in the street in front of his premises without lawful authority.  *Hickey* v. *Railroad Co.* 6 Ill. App. 172; *Railroad Co.* v. *Cheatham,* 58 id. 318; *Stewart* v. *Railway Co.* 58 Ill. 446; *Kirchman* v. *Railway Co.* id. 516.

HAMLINE, SCOTT & LORD, *amici curiæ:*

Any license granted to a railroad to occupy a public street without the petition required having first been presented to the council is void.  *Hunt* v. *Railroad Co.* 121 Ill. 645; *McCartney* v. *Railroad Co.* 112 id. 611; *Railway Co.* v. *Chicago,* 96 id. 620; *Wiggins Ferry Co.* v. *Railway Co.* 107 id. 450; *Hickey* v. *Railroad Co.* 6 Ill. App. 172.

The right to light and air, and access to and from all parts of the street in front of an abutting lot, no matter who owns the fee of the street, is a property right appurtenant to such lot, the invasion of which will be the occasion of special damages to it.  *Barrows* v. *Sycamore,* 150 Ill. 596; *Field* v. *Barling,* 149 id. 565; *Barnett* v. *Johnson,* 15 N. J. Eq. 481; *Dill* v. *School Board,* 47 N. J. 421; *Railway Co.* v. *Cummingsville,* 14 Ohio St. 523; *Cook* v. *Burlington,* 36 Iowa, 102; *Story* v. *Railway Co.* 90 N. Y. 123; *Salisbury* v. *Andrews,* 128 Mass. 336; *Schworer* v. *Market Ass.* 99 id. 285.

For a continuing nuisance one may bring a new action every day, as each day it continues without right it is in the eye of the law a new nuisance.  *Railroad Co.* v. *Schaffer,* 124 Ill. 11; *Railway Co.* v. *Thillman,* 143 id. 136; *Railroad Co.* v. *Baptist Church,* 137 U. S. 575.

Damages cannot be recovered in any one suit for injuries resulting subsequently to the bringing of the suit. *Brewing Co.* v. *Compton,* 142 Ill. 511; *Uline* v. *Railroad Co.* 101 N. Y. 98; *Wells* v. *Railroad Co.* 151 Mass. 46.

The principle that a property owner may recover all his damages against a railroad in a street is confined to the case of a railroad lawfully occupying a street.  *Loeb* v. *Railroad Co.* 118 Ill. 211; *Railroad Co.* v. *Wachter,* 123 id. 440; *Brewing Co.* v. *Compton,* 142 id. 511; *Railroad Co.* v. *Schaffer,* 124 id. 112.

If the right did not exist before, the Frontage act creates a trust for the benefit of the abutting property holder, which he may enforce in equity. *Hunt* v. *Railroad Co.* 121 Ill. 638; *McCartney* v. *Railway Co.* 112 id. 612; *Wolverton* v. *Taylor*, 132 id. 197; *Harper* v. *Union Manf. Co.* 100 id. 229; *Bez* v. *Railway Co.* 23 Ill. App. 137; *Taylor* v. *Railway Co.* 80 Mich. 77; *Roberts* v. *Easton*, 19 Ohio St. 78; *Morris* v. *Thomas*, 17 Ill. 114.

KNIGHT & BROWN, and WILSON, MOORE & McILVAINE, for appellee:

The finding of the city council under the Frontage act cannot be questioned at the suit of an abutting owner. Municipal Code of Chicago, 1881, pp. 490, 504; *People* v. *Railway Co.* 73 Ill. 541; *Whittaker* v. *Venice*, 150 id. 195; *Ely* v. *Commissioners*, 112 Ind. 361; *Colona* v. *Eames*, 92 U. S. 484; *Bissell* v. *Jeffersonville*, 24 How. 287; *Knox County* v. *Aspinwall*, 21 id. 544; *Lane* v. *Morris*, 51 N. H. 422; *Parker* v. *Catholic Bishop*, 146 Ill. 155; *Owners of Lands* v. *People*, 113 id. 299; *Osborne* v. *People*, 103 id. 224; *McGowen* v. *Duff*, 41 Ill. App. 57; *People* v. *Jones*, 137 Ill. 40; *Smith* v. *Comrs. of Highways*, 150 id. 385; *Nealy* v. *Brown*, 1 Gilm. 10; *Railway Co.* v. *Park Comrs.* 151 Ill. 204; Cooley's Const. Lim. (6th ed.) 501; *Humboldt* v. *Dinsmore*, 75 Cal. 604.

The use of a street or highway for the purpose of furnishing additional facilities for travel or transportation will not be enjoined at the suit of abutting owner. *Moses* v. *Railroad Co.* 21 Ill. 516; *Stetson* v. *Railroad Co.* 75 id. 74; *Patterson* v. *Railway Co.* id. 588; *Railway Co.* v. *Chicago*, 121 id. 176; *Railroad Co.* v. *McGinnis*, 79 id. 269; *Railroad Co.* v. *People*, 92 id. 170; *Schertz* v. *Railroad Co.* 84 id. 135; *Mills* v. *Parlin*, 106 id. 60; *Truesdale* v. *Grape Sugar Co.* 101 id. 561; *Insurance Co.* v. *Heiss*, 141 id. 35; *Corcoran* v. *Railroad Co.* 149 id. 291; *White* v. *Railroad Co.* 154 id. 626; *Railroad Co.* v. *Railway Co.* 156 id. 255.

The remedy for an unlawful use of a public highway is by information in chancery by the Attorney General or

by bill in chancery by the city.  *Railway Co.* v. *Quincy*, 136 Ill. 492; *Attorney General* v. *Railroad Co.* 112 id. 520; *People* v. *Railroad Co.* 54 Ill. App. 348; Wood on Nuisances, (3d ed.) p. 109, secs. 80, 81; *Chicago* v. *Wright*, 69 Ill. 318; *Springer* v. *Walters*, 139 id. 419.

Appellant has an adequate remedy at law, and relief in equity will therefore not be granted.  *Railroad Co.* v. *Darke*, 148 Ill. 226; *Railroad Co.* v. *Scott*, 132 id. 429; *Railroad Co.* v. *Robbins*, 159 id. 598; *Gault* v. *Railroad Co.* 157 id. 125; *Rigney* v. *Chicago*, 102 id. 64; *Railroad Co.* v. *Ayers*, 106 id. 511; *Railroad Co.* v. *Reich*, 101 id. 157; *Railroad Co.* v. *Stein*, 65 id. 75; *Gas Light Co.* v. *Graham*, 28 id. 73; *Railroad Co.* v. *Grabill*, 50 id. 242; *Railroad Co.* v. *Maher*, 96 id. 312; *Gas Light Co.* v. *Howell*, 92 id. 19.

Injunction will not be granted where it will operate greatly to the prejudice of the defendant and the public, without corresponding advantage to the complainant. *Pratt* v. *Railway Co.* 35 N. Y. Sup. 557; *Gray* v. *Railroad Co.* 128 N. Y. 509; High on Injunctions, 596; *H. & H. Co.* v. *Pashell*, 5 Del. Ch. 435; *Fernes* v. *Railroad Co.* 121 N. Y. 505; *Railroad Co.* v. *Adams*, 28 Fla. 656; *Ammerman* v. *Dean*, 132 N. Y. 355; *I. C. Com.* v. *Railroad Co.* 64 Fed. Rep. 981; *Nason* v. *Sanborn*, 45 N. H. 171; *Bassett* v. *Manufacturing Co.* 47 id. 427.

Mr. JUSTICE WILKIN delivered the opinion of the court:

This is a bill for an injunction by appellant, as abutting property owner, to restrain appellee from building an elevated street railroad in Lake street, in the city of Chicago.  The circuit court of Cook county sustained a demurrer to the bill and dismissed it for want of equity. The Appellate Court having affirmed that decree, this appeal is prosecuted.

The bill alleges that complainant is the owner of five business houses, numbered 33, 35, 37, 39 and 41, fronting on the street between the east line of Market street and the east line of Wabash avenue, holding title to the lots on which they are erected by lease from the owner of the

fee for a term extending from March 1, 1872, to March 1, 1957. It then sets up the passage of an ordinance by the city council, at the request of the defendant, authorizing and permitting it to construct and operate an elevated railroad in the street, (a copy of the ordinance being exhibited with the bill,) and alleges that the company has accepted the same and is proceeding to construct its road in pursuance thereof. It alleges that such ordinance is illegal and void, because passed without a valid petition therefor signed by owners representing more than one-half of the frontage of the street between said east line of Market street and east line of Wabash avenue, as required by the statute; that the distance between those lines is $2893\frac{56}{100}$ feet, being less than one mile, with a total frontage of $4541\frac{88}{100}$ feet, exclusive of street crossings; that in the preamble to the ordinance it is recited that the petition of property owners fronting on the street between the points named, "representing out of the total frontage of 4514 feet $2468\frac{58}{100}$ feet consenting to the construction and operation of said elevated railroad, has been presented to and is now on file with said council;" that such recital is not true; that there was presented to the said council by the defendant, before the passage of the ordinance, petitions "purporting to be signed by owners of the land representing more than one-half of the frontage on said Lake street between the east line of Market street and the east line of Wabash avenue;" that the defendant represented to the council that more than half the owners of the frontage had so consented; that a large number of signatures appearing upon said alleged petition were not the signatures of owners of the property for which they signed, or of any person actually authorized to sign the same or consent for any owner of property for such frontage, but are the signatures of persons purporting to act in a fiduciary capacity, as guardians, trustees, administrators, attorneys in fact, agents, etc. It is next stated that complainant caused the records and files of the pro-

bate, circuit and Superior Courts, as well as the records of the recorder of Cook county, to be examined, and obtained surveys of the frontage on said streets, and procured from the city clerk a correct copy of all petitions presented to the council by the defendant of owners purporting to have consented to the construction and operation of said road; that he caused to be made a true and correct search by abstracters of title for the owners of all lands along the route of said road, and on the information so obtained charges that those who signed certain consents were not in fact the real owners of the frontage signed for, some of these allegations being that they were not the owners of record; that guardians, trustees, agents, etc., were not authorized to sign the same, or that their authority so to do was not filed with the city council or presented with the petition. It is further charged, on information and belief, that the defendant, or some of its agents or employees, to procure the consent of certain parties signing said petition, paid them either money, bonds or stock therefor, and induced others to sign the same by threats and intimidation. It is then alleged that, deducting such signatures so improperly made, less than one-half of the owners representing the frontage on said street consented to the construction and operation of the said road, and that the ordinance authorizing the same is therefore illegal and void, and the defendant has no lawful authority to build its said road, and that if allowed to do so certain damages will result to the complainant's property, such as interfering with free access thereto and obstruction of air and light. The prayer is that the defendant be perpetually enjoined from proceeding with the construction of the said railroad.

The question for decision is, do the facts well pleaded in this bill entitle the complainant to the injunction prayed for? It is conceded that the common council of the city of Chicago is, by the provisions of our statute, given exclusive control and supervision of its streets,

the fee of which is vested in the municipality. While they are held in trust for the public use, and can only be appropriated to the purposes for which they were dedicated, it is the settled law of this State that permitting street railroads to be placed therein is not subjecting them to an unlawful use. It has often been so decided by this court as to surface roads, and no good reason has been suggested, and none, we think, can be offered, for making a distinction in this regard between elevated and surface roads. The road in question, if constructed in conformity with the requirements of the ordinance, will certainly obstruct travel upon the street by other means less, and be less hazardous to the public, than would a surface road. The pillars upon which the superstructure is to be built, which it is claimed will exclude the public from a part of the street, are but a necessary part of the road,—as much so as are rails and other parts of tracks constructed upon the ground, or as are trolley-posts placed in the street for operating an electric road by the trolley system. It is true that all these things do, to some extent, interfere with the use of the street by ordinary vehicles, but the inconvenience is one which must be borne for the benefit resulting to the public from the better modes of travel thus afforded. (*Moses* v. *Pittsburg, Fort Wayne and Chicago Railroad Co.* 21 Ill. 515.) We held in *Chicago, Burlington and Quincy Railroad Co.* v. *West Chicago Street Railroad Co.* 156 Ill. 255, that a street railway operated by electricity, with trolley-posts on the streets, was not a new servitude of the street, and that the poles were not unwarranted obstructions in the same, as are telegraph and telephone poles, "because such erections aid and facilitate the use of the public street for the purposes of travel and transportation." The same is true of the pillars used in constructing elevated roads. In view of the known fact that such elevated lines in large cities greatly accommodate the public by increasing the facility and safety of transit, it can scarcely be seriously

contended that permitting them to be constructed and operated is to subject the streets to a new servitude or unlawful use. The right of a city to permit them is clearly recognized by the act of July 1, 1883, entitled "An act in regard to the use of streets and alleys in incorporated cities and villages by elevated railroads and elevated ways and conveyors." 2 Starr & Curtis' Stat. chap. 114, secs. 201-203.

This court has frequently held, that where an additional use of a street has been granted by the city to build and operate a street railroad, an injunction will not be granted to restrain the construction or operation of the road at the suit of an abutting property owner; (*Moses v. Railroad Co. supra; Murphy* v. *City of Chicago,* 29 Ill. 279;) and that since the constitution of 1870 such owner can not maintain a bill to enjoin the same until the resulting damages to his property are ascertained and paid, but that his remedy is by action at law for such damages. (*Stetson* v. *Chicago and Evanston Railroad Co.* 75 Ill. 74; *Patterson* v. *Chicago, Danville and Vincennes Railroad Co.* id. 588; *Chicago, Burlington and Quincy Railroad Co.* v. *McGinnis,* 79 id. 269; *Peoria and Rock Island Railway Co.* v. *Schertz,* 84 id. 135; *Penn Mutual Life Ins. Co.* v. *Heiss,* 141 id. 35.) The same doctrine is recognized in *Corcoran* v. *Chicago, Madison and Northern Railroad Co.* 149 Ill. 291, and *White* v. *Elevated Railroad Co.* 154 id. 620. We said in *Chicago, Burlington and Quincy Railroad Co.* v. *West Chicago Street Railroad Co. supra,* (p. 273): "Where the fee of the street is in the city, such damages as the abutting owner may suffer from the laying of a railroad track in the street are merely consequential, so far, at least, as they affect the property abutting on the street. In such case, as there is no physical taking of the land, injunction will not lie to enjoin the taking, the remedy being an action at law for damages."

But it is insisted on behalf of complainant, that on the facts set up in his bill the ordinance must be treated as passed without the required consent of abutting own-

ers, and therefore illegal and void, which being true, the defendant should be held as proceeding with the work without any authority of law whatever, whereas in the cases referred to lawful consent of the city was shown. The real ground upon which relief by injunction is denied in such cases is, that the use of the street being within the purposes for which it is laid out, and therefore a proper use, the right to occupy is properly a question between the defendant and the municipality having the control of its streets and charged with the duty of keeping them free from unlawful obstructions, or between the defendant and the public generally, the individual being left to his action for damages for any injury resulting to his property. He has no standing in equity on account of public injury or for the purpose of inflicting punishment upon the defendant for its wrongful acts. He can only invoke that jurisdiction in order to protect his property from threatened injury. His injury is a depreciation of the property, which is capable of being estimated in money and recoverable in an action at law, therefore a court of equity will not interfere by injunction. As stated by Chief Justice FULLER in *Osborne* v. *Missouri Pacific Railway Co.* 147 U. S. 253: "But where there is no direct taking of the estate itself, in whole or in part, and the injury complained of is the infliction of damage in respect to the complete enjoyment thereof, a court of equity must be satisfied that the threatened damage is substantial and a remedy at law in fact inadequate before restraint will be laid upon the progress of a public work; and if the case made discloses only a legal right to recover damages rather than to demand compensation, the court will decline to interfere." To the same effect is the language used in the opinion of Justice BREWER in *In re Debs*, 158 U. S. 591.

In *Morris and Essex Railroad Co.* v. *Pruden*, 20 N. J. Eq. 530, cited in the *Debs case*, it is said: "Mere diminution of the value of the property of the party complaining, by the

nuisance, without irreparable mischief, will not furnish any foundation for equitable relief. (*Zabriskie* v. *Jersey City and Bergen Railroad Co.* 2 Beas. 314.) It must not be overlooked that the defendants are engaged in a public work by the completion of which the public interest will be greatly advanced. The injunction by which the progress of the work is arrested must not only cause great injury to the defendant, but also is the occasion of great inconvenience to the public." And again: "The defendants will not occupy with the proposed track any of the complainant's lands. For the contingent and consequential damages he may suffer from any unlawful interference with his enjoyment of his property he has his remedy by action at law, whenever and as often as loss or damage ensues; and if the use of a railroad in front of his premises becomes a nuisance, or the aggression proves to be a permanent injury without an adequate remedy at law, then the court will be competent to administer equitable relief by injunction to prevent its continuance, or for its removal. But a strong case must be presented and the impending danger must be imminent to justify the issuing of an injunction as a precautionary and preventive remedy." *Drake* v. *Hudson River Railroad Co.* 7 Barb. 508.

In *Truesdale* v. *Grape Sugar Co.* 101 Ill. 561, Mr. Justice SCOTT, in the opinion adopted by the court, said (p. 564): "The track is to be constructed on lands not owned by complainants, and under a license from the only party having lawful authority to grant the privilege, and any expected damages that may be sustained by reason of the proposed work can only be recovered in an action at law. Equity will not entertain jurisdiction to enjoin the proposed work,"—citing the *Stetson, Patterson* and other cases. And Justice MULKEY, dissenting, also said (p. 565): "If the proposed railway, when put in operation, would be open to the public generally, then I concede, under the prior decisions of this court, an injunction would not lie at the suit of a private individual, however much he

might be injured by the building and operating of such road. But such is not the case here."

It was said in *Patterson* v. *Chicago, Danville and Vincennes Railroad Co. supra,* (on p. 590): "The claim is, that upon the principle of strict construction the company must be confined within the limits of the defined district. Without undertaking any discussion of· this question, it is sufficient to say that the fee of the streets is in the city, and it has the power to control and regulate their use, and any such excess of authority in the use of a street as is here claimed *must be left to be redressed by the public authority, and equity should not, in such case, at the suit of a private individual, enjoin the operating of a railroad."* This case has been often cited with approval in later cases.

Where the use of the street has not been legally authorized, as held in *McCartney* v. *Chicago and Evanston Railroad Co.* 112 Ill. 611, *Hunt* v. *Horse and Dummy Railway Co.* 121 id. 638, *Chicago, Burlington and Quincy Railway Co.* v. *City of Quincy,* 136 id. 489, and *Metropolitan City Railway Co.* v. *City of Chicago,* 96 id. 620, an information in chancery by the Attorney General or State's attorney on behalf of the People, or, as in the last named case, a bill for injunction by the city, affords a proper and complete remedy. If, as contended, the abutting owner can also maintain a bill on the same ground,—that is, that the building of the road is without the valid consent of the city,—then the language in the *Patterson case,* "and any such excess of authority in the use of a street as is here claimed must be left to be redressed by the public authority," must be overruled and the authorities above cited as to the remedy by the Attorney General or city qualified. If a railroad is legally authorized no one can enjoin its construction. In other words, it is only when the consent of the city has not been lawfully obtained that any one can complain in a court of equity, and, therefore, when it is said "the remedy is by the public authorities, the abutting property holder being remitted to his action at law for

damages," cases in which the work is unlawful must be contemplated, and such is clearly the force of the *Patterson case, supra.* This doctrine is recognized again in the *Corcoran case, supra.* In the *Schertz case, supra,* the ordinance authorized the laying of a track along a street on condition that the consent of property owners on the opposite side of the street should first be obtained, but the company proceeded with the work without complying with that condition, and a bill for injunction by an abutting property holder was filed. As shown by the bill in that case, the defendant was proceeding illegally and certainly without the consent of the city, and the question was directly brought to the attention of the court, as appears from the dissenting opinion there filed, but the relief was denied.

The principle is, that, the abutting property owner having a complete remedy at law, a court of equity will not, upon his allegation that the ordinance authorizing the construction is illegal, enjoin the defendant from proceeding until the question of illegality can be litigated and determined, but will remit him to his action at law, —and this, it seems to us, is a just and reasonable rule, the enforcement of which will protect the rights of all parties interested. To hold otherwise would be to render impracticable the building and operation of street car lines under our statute. While such improvements are owned and operated by private individuals or corporations, the use of the streets is public and not private, and upon that theory alone they are permitted to be constructed in the streets, and it will not be denied that in large and populous communities they are of great public utility, if not a public necessity. While, therefore, the private owner is entitled to have all his property rights fully protected, that right should be accorded him, if possible, by a remedy which will not unnecessarily injure others and render impossible the construction and operation of necessary facilities for public travel. A moment's

reflection will, we think, convince any one that if every abutting owner not consenting may enjoin street railway companies from building their lines in streets upon the ground that the consent of the city has not been legally obtained, because of facts alleged which do not appear upon the face of the proceedings, the building and operation of all such lines will become practically impossible. In a case like this the work would necessarily be stopped until titles to abutting property could be adjudicated and settled, the powers of agents, etc., determined, and the motives which may have prompted owners to give their consent inquired into; and after this had been done, which, in the ordinary course of litigation, would require many months or even years of time, if the facts should be found in favor of the validity of the ordinance the work could proceed as to this complainant, he still being entitled to his action for damages. The decision, however, would settle the validity of the ordinance between him and the defendant, and no one else. Any number of other owners might, in succession, procure injunctions on the same or similar grounds, and prosecute them to a like final determination. Manifestly, neither persons nor corporations would hazard capital in an enterprise subject to such uncertainty and delay. There is a certain, adequate and complete remedy at the suit of the public whenever there is a threatened or actual unlawful obstruction of the streets and highways, and, as we think, an equally certain, adequate and conclusive remedy to the abutting owner for all his damages, present and prospective. The contention that he cannot have such remedy by a single action we deem untenable. It is not denied that the damages for which he would be entitled to recover are the same in kind as if the building of the road were lawful.

But it is said that, being in the street unlawfully, the obstruction is a public nuisance, subject to be abated and removed at any time, and therefore the recovery could only be had for damages to the time of bringing the suit.

This position is based upon the proposition that a railroad unlawfully in a street is a public nuisance, and liable, as such, to be abated at any time, and therefore a recovery for damages can only be had to the time of bringing the action, and hence a multiplicity of suits will become necessary to give the complainant a complete remedy. The position is untenable. The injury would be a continuing and permanent one, and therefore a single recovery can be had for the whole damages, present and future. (*Chicago and Eastern Illinois Railroad Co.* v. *Loeb*, 118 Ill. 203, and authorities cited; *Galt* v. *Chicago and Northwestern Railway Co.* 157 id. 125.) Moreover, we think it clear the defendant, if sued for resulting injury, could not be heard to say its road was a nuisance or built in violation of law. Having accepted and availed itself of the grant of authority from the city to occupy the street, it would be estopped to question the validity of that authority. For the purposes of a recovery against it of damages, whether present or prospective, its road must be deemed lawfully in the street and it compelled to fully compensate all parties injured upon that theory. This proposition seems to us so reasonable that authorities need scarcely be cited in its support. It is, however, fully sustained by the following cases: *City of Chicago* v. *Wheeler*, 25 Ill. 396; *Higgins* v. *City of Chicago*, 18 id. 276; *People* v. *Maxon*, 139 id. 306; *Heims Brewing Co.* v. *Flannery*, 137 id. 309; *Joy* v. *St. Louis*, 138 U. S. 51.

It is again urged, that sections 1 and 2 of the statute of 1883, *supra*, known as the "Frontage act," give abutting owners a new right in streets that is enforceable in equity. We have carefully considered this branch of the case and the arguments of counsel in its support, and are unable to find anything in the statute to warrant the conclusion. It is substantially the same as paragraph 90, section 63, of the City and Village act, and it must be admitted that if one of these statutes has the effect of conferring a new property right upon abutting owners

the other has also. We think it is manifest that these provisions were intended merely as a restriction upon the authority of city councils and boards of trustees in cities and villages to authorize the laying of railroad tracks along streets or alleys, and in no way add to the rights of such owners in the streets. The amount of damages which such an owner is entitled to recover for injury to his property is certainly no greater since the passage of these statutes than it was before. We scarcely think it will be contended that in estimating the damages done to adjacent property the Frontage act can in any way enter into the consideration. In fact, we understand it to be conceded that the measure of complainant's recovery in an action at law would be the same whether the improvement is lawfully in the street or not, except as it is contended that damages can in the latter case only be recovered to the date of bringing the action. If the requisite consent is not given the ordinance may be treated as illegal, as the one in *Metropolitan City Railway Co.* v. *City of Chicago* was held to be, for want of the required notice, and that illegality would, as we have already said, authorize an action on behalf of the public, but would give an abutting owner no right to relief in a court of equity. For the same reasons it must be so held where the alleged illegality is the want of the required petition by owners of the frontage.

Our conclusion, upon considering the whole case, is, that the demurrer was properly sustained and that the judgment of the Appellate Court should be affirmed.

Able and elaborate arguments have been filed by counsel for the appellant, and authorities cited, which, it is insisted, sustain a different view as to equity jurisdiction. Keeping in mind the fact that the proposed construction of defendant's road will impose no unwarrantable additional servitude upon the street, none of the decisions of this court referred to are in point. Those cited from the State of New York are distinguishable in that there the

holding is that the abutting property holder can in no case recover future damages in an action at law, and equity jurisdiction is for that reason entertained,—in other words, having no complete and adequate remedy at law, courts of equity will afford him that remedy. Without undertaking to determine whether decisions cited from other courts are in conflict with the view here announced, it is enough to say that if they are they must also be held as conflicting with our former decisions.

*Judgment affirmed.*

MAGRUDER, C. J.: I cannot concur in this opinion.