McArdle v. Chicago City Railway Co.

Mary J. McArdle v. Chicago City Railway Company.

Gen. No. 13,734.

1. JUDICIAL NOTICE—*of what taken.* Judicial notice will be taken of the statutes chartering and granting power to the Chicago City Railway Company.

2. NUISANCES—*how defense of non-liability pursuant to judicial grant cannot be raised.* The defense that a plaintiff cannot recover damages against a defendant traction company as for a nuisance for actions which in a private individual would constitute a nuisance and be actionable, because the acts complained of are performed under legislative sanction, cannot ordinarily be raised by demurrer. It must be pleaded.

3. NUISANCES—*what does not grant immunity for maintenance of.* Immunity from legal or equitable actions by an individual against a traction company because of the latter's illegal and unauthorized maintenance of a structure upon private land, does not follow from the fact alone that such structure is connected with a railroading business.

Action in case. Appeal from the Circuit Court of Cook county; the Hon. CHARLES M. WALKER, Judge, presiding. Heard in this court at the October term, 1907. Reversed and remanded. Opinion filed April 30, 1908.

**Statement by the Court.** The appellant, Mary J. McArdle, began an action on the case against the appellee, the Chicago City Railway Company, February 26, 1904. She filed a declaration therein and amended the same at some time previous to June 29, 1905, on which date a demurrer of the defendant to an amended declaration was sustained by the court. A second amended declaration was filed on July 3, 1905, and to this amended declaration a general and special demurrer was filed by the defendant on July 19, 1905. February 19, 1907, after argument, the Circuit Court sustained the demurrer and entered judgment in favor of defendant *"eat inde sine die."* From that judgment the plaintiff appealed to this court and here assigns as error, that the court erred in sustaining the demurrer of the defendant to the said amended declaration, and in entering judgment against the plaintiff in bar of her action.

The question in this court therefore is, does the amended declaration of July 3, 1905, sufficiently state, as against the said general and special demurrer, a good cause of action?

The said amended declaration is in five counts.

The first states the ownership and possession by the plaintiff, Mary J. McArdle, of "the north thirty feet of the south 113 feet of lot two in Lynch's addition to Hyde Park in the west half of the southwest quarter of section ten, township thirty-eight north, range fourteen east of the third principal meridian, in the county of Cook," and that she maintained thereon, before and at the time of the committing of the alleged grievances by the defendant, a residence for herself and her family, and that with her family during all that time she occupied and inhabited said residence, which was known as 5203 Michigan avenue, in Chicago. It also

states that the said defendant, the Chicago City Railway Company, was during said time possessed of a certain other piece or parcel of real estate situated within five hundred feet of the said residence of the plaintiff, with "certain buildings and steam boilers, engines, electrical machinery, smoke chimneys, exhaust steam pipes, coal elevators, coal crushers, and such like appliances, devices and machinery thereon situated." It alleges that these "premises, buildings, machinery, engines, smoke chimneys, steam pipes, coal elevators and crushers, the said defendant during all the time hereinafter mentioned, operated day and night." Also, that the said real estate of the plaintiff and defendant is located within a thickly settled residence district of the city of Chicago, but that nevertheless "the defendant, regardless of its duty in the premises," on the first day of March, 1899, and thereafter, "in the said operation of said power houses, wrongfully and injuriously caused divers noxious and offensive vapors, steams, fumes, gases, smoke, soot, smells and stenches and divers great noises and severe vibrations to issue and proceed" "from said real estate of the said defendant and the aforesaid buildings, machinery, etc., thereon, whereby and by means whereof, the said noxious and offensive vapors, steams, fumes, gases, smoke, soot, smell and stenches, entered into and spread and diffused themselves over, upon, into and through said real estate and residence of the said plaintiff, and the air over, through and about the same was thereby greatly filled and impregnated with said vapor, steam, fumes, gases, smoke, soot, smells and stenches, and on several days and times aforesaid, became and still is corrupted, offensive, unwholesome, unhealthy and uncomfortable, and said noises and vibrations were carried to and through said premises and residence of the said plaintiff, and caused the same to tremble, jar, vibrate and shake on the said several days and times aforesaid, and the plaintiff and her family have thereby been and still

are greatly annoyed and incommoded in the use, possession, occupation and enjoyment of her said real estate, and have thereby also been and still are greatly injured in their comfort, health and enjoyment of said plaintiff's said premises, and up to and prior to the commencement of this suit she hath been and is by means of the committing of the grievances aforesaid by the said defendant aforesaid, up to and prior to the commencement of this suit, otherwise greatly injured and damnified.''

The third count differs from the first principally in adding to the other allegations, statements that the defendant is a corporation existing under two statutes of Illinois—one of February 14, 1859, entitled ''An act to promote the construction of horse railways in the city of Chicago,'' and the other of February 6, 1865, entitled ''An act concerning horse railways in the city of Chicago,'' and that the defendant is vested with the powers by said acts conferred, and that the building of the defendant is, with its appurtenances, commonly called and known as a power house, and that in the said building the defendant has generated steam and electrical power used in street railroading and in operating two thousand street cars over two hundred miles of street railroad in Chicago.

The fifth count does not add anything to or materially differ from the first and third.

The second and fourth counts add an allegation that during the time of the commission of the grievances complained of, there were in force ordinances of the city of Chicago declaring the emission of dense smoke from any chimney anywhere within the city to be a public nuisance. Said ordinances are set out in the declaration *in haec verba,* and it is further alleged in each of these counts that notwithstanding said ordinances, the defendant, regardless of its duty in the premises, on, to wit, the first day of March, 1899, and on divers times and occasions thereafter, wrongfully and injuriously caused, suffered and permitted dense

smoke to be emitted from the said chimneys and to be spread and diffused over, upon, in and through the plaintiff's residence and premises; whereby and by means whereof the air, through, over and about the same became and was thereby greatly filled and impregnated with said dense smoke and the offensive, unwholesome, unhealthy and uncomfortable fumes and smells accompanying said smoke, and on said days and times the plaintiff and her family have thereby been and still are greatly annoyed and incommoded in the use, possession, occupation and enjoyment of the plaintiff's real estate and in their health, comfort and enjoyment, and have "prior and up to the commencement of this suit, by means of the committing of the aforesaid grievances, been and are otherwise greatly injured and damnified," etc.

The second and fourth counts differ materially from each other only in that the fourth count contains the allegations concerning the statutes under which the defendant corporation exists and is vested with power, while the second does not.

The demurrer which was filed to this declaration, besides its allegation that no count of said declaration is sufficient in law to maintain the action, assigns as special causes of demurrer to the declaration and each count thereof, "that said declaration as amended, and each and every count, both in the allegations of duty and in the allegations of breach of duty, is too general, vague, indefinite and meagre, and wholly fails to inform the defendant of the particulars in which the duty and negligence complained of consists."

McARDLE & McARDLE, for appellant.

GEORGE GILLETTE, for appellee; E. R. BLISS, of counsel.

MR. JUSTICE BROWN delivered the opinion of the court.

In our opinion the defense which the defendant com-

pany interposes by its argument in this appeal to the allegations of the plaintiff's declaration, was not properly raised by the demurrer to said declaration.

The defense is that the plaintiff cannot recover damages against the defendant corporation as for a nuisance for actions which in a private individual would constitute a nuisance and be actionable, because the actions complained of are performed under a legislative sanction—under indeed a grant of power from the legislature to do these very things.

We think this is a substantive defense, necessary to be pleaded and proved to be available.

If it is available to the defendant on the general and special demurrer filed to the declaration, it must be on the general and not the special grounds asserted. The special ground set forth resolves itself into the indefiniteness of the charges in the declaration—a very different defense from that made in argument, and which could not be sustained, in our opinion, against those allegations of a nuisance made in said declaration.

If the defense is held available under the general demurrer, it must be on the theory that the first, second and fifth counts of the declaration, simply by virtue of the fact that the defendant is the "Chicago City Railway Company," of the acts affecting the incorporation of which we must take judicial notice, and the third and fourth counts for the same reason, and their further mention of said acts (of February 14, 1859, and February 6, 1865) contain the means of their own destruction and are self-condemned.

It can hardly be claimed, we think, that the allegations of the second, third and fourth counts, that the "steam and electrical power" generated in the buildings of the defendant described in the declaration were "used and applied by it in its business of street railroading," would be sufficient to raise a question whether the defendant was not exempt from the ordi-

nary liability of a person causing such a nuisance as is charged in those counts.

At all events we could admit no such claim. An unauthorized and usurped transaction of a street railroad business would give no immunity from the ordinary liability for damages in a case like this. The Supreme Court in Doane v. Lake Street Elevated Railroad Company, 165 Ill. 510, said that as against an unauthorized and illegal structure in the streets or highways, of which streets and highways the public authorities were the proper guardians, equitable relief was confined to such public authorities, but that an action for damages would lie at law to a private person suffering a special damage.

We know of no case which lends any color to the proposition that any immunity from legal or equitable action by an individual belongs to an illegal and unauthorized structure upon private land merely because it is connected with a railroading business. The case cited by counsel, Chicago General Railway Co. v. Chicago City Railway Co., 186 Ill. 219, certainly does not.

This leaves us the question, therefore, whether the statutes chartering and granting power to the Chicago City Railway Company, brought to our attention by the declaration and judicially known to us, do, by themselves, without proof of city ordinances or attendant circumstances or of what has been done under those statutes other than operating a large system of street railroading, authorize the said Chicago City Railway Company to cause, and hold it harmless in causing, "noxious and offensive vapors, steams, fumes, gases, smoke, soot, smells and stenches" and "great noises and vibrations" to issue forth from its real estate and diffuse themselves over the plaintiff's residence to her great damage; and also to "cause, suffer and permit dense smoke to be emitted from the chimneys of its building," to the great annoyance and injury of the plaintiff, although the city of Chicago by

its ordinance has declared that the emission of dense smoke from such a chimney is a public nuisance.

We do not so read the statutes in question.

The first (of February 14, 1859), under the title of "An act to promote the construction of horse railways in the city of Chicago," constitutes several persons named the Chicago City Railway Company for twenty-five years, and authorizes the said company "to construct, maintain and operate a single or double track railway, with all necessary and convenient tracks for turn-outs, side tracks and appendages, in the city of Chicago, and in, on, over and along such street or streets, highway or highways, bridge or bridges, river or rivers, within the present or future limits of the south or west divisions of the city of Chicago as the common council of said city have authorized said corporators, or any of them, or shall authorize said corporation so to do, in such manner and upon such terms and conditions, and with such rights and privileges as the said common council has or may have contracted with said parties or any or either of them may prescribe," etc. Except the final clause making it a public act, the only other provision needing notice from us, is that giving the corporation power, in order to enable it "to construct any or all of the railways authorized *or their* appendages," to take and apply private property for the purposes and in the manner prescribed by certain acts for the condemnation of private property, "ascertaining and making recompense for all damages sustained, agreeably to the provisions of" such acts.

The other Act (of February 6, 1865) is the famous "Ninety-nine Year Act," which extended the corporate life of the company and used thereafter ambiguous language which led to prolonged controversy concerning the duration of certain grants of power and licenses from the city. But neither of these Acts in and by itself, disjoined from permission and license through ordinances of the city council, authorizes the use of an electric or cable car system on the streets of Chi-

cago, nor does the case of Blair v. Chicago, 201 U. S. 400, so decide. The reasoning of the court in its opinion in that case points to exactly an opposite conclusion. It places its decision on the main question in the case indeed, on the proposition that after as well as before the act of 1865 the street railroad companies were "required to obtain the authority of the city before using the streets, such use to be upon terms and conditions and with such rights and privileges as the city had or might thereafter prescribe by contract with the companies."

The court did, however, decide that the grant of power in the acts was "broad enough to authorize *the city to grant and the railway company to accept* a changed method of operation of the railways by applying thereto a new and more efficient and economical power."

We certainly are not undertaking to decide to the contrary in this case, either with reference to the issues raised in Blair v. Chicago, or to those in the case at bar. The question is not before us, for under the record in this case we know nothing of any grant from the city to the defendant corporation changing the method of the operation of its railway, nor of any acceptance by said corporation. We have judicial knowledge of the statutes under which the Chicago City Railway Company was organized and is acting. We have none of the ordinances of the city which have made those acts effective in various directions.

We have mentioned this want of anything in the record as it stands showing that the defendant company has authority from competent law-making power to use steam or electric power, more as an illustration than otherwise. For we think that even if that authority were shown, further proof on the part of the company to render it immune from liability for the injurious acts complained of by the plaintiff would be necessary, even in an action like this based on the nuisance. It must at least prove the authority to use

electrically driven cars and the necessity and inevitableness, in so using them, of the acts and injury as well.

Counsel for the defendant rely on the case of Chicago North Shore Street Railway Co. v. Payne, 94 Ill. App. 466,—192 Ill. 239, as establishing a different rule. We do not think it does. The Payne case did not go off on demurrer; it was tried. The Supreme Court decided contrary to the contention of the company, that an additional count to the declaration, which declared on a permanent injury, did not state a cause of action different from that declared on in the first count, and that the permanent damages might properly be (as they were) recovered in the action. It also said: "If the power house was built and operated by the authority of the charter, it cannot be held a nuisance, but the liability of defendant in this suit is in no way affected by that circumstance. While in such case the plaintiff could not sue as for a nuisance, the right of compensation is guaranteed by the constitution and may be enforced in an action on the case."

In another connection it says: "The defendant, acting within its charter, had a legal right to maintain its power house at that place, and plaintiff had no legal right to interfere or compel a change. In such a case, in legal contemplation, all damages which will be sustained as the effect of the Act are sustained immediately, and the measure of damages is the depreciation in market value."

As we have said, the Payne case was tried, and there is no reason to assume that the court was stating the right of the defendant to keep and operate its power house in the locality involved as an admission of, or inference from, the declaration. It was presumably a proved fact in the case. If not, it resulted from legislative Acts, of which the court had judicial notice, very different from those involved here.

The court in the Payne case decided that the first

count of the declaration in that case authorized and would have required a recovery, if there were any recovery, for all damages past, present and future. The opinion indeed does call attention to the averment in that count that the market value of the plaintiff's premises was reduced by the alleged grievances (in which alone it differs materially from the declaration in the case at bar), but the essential matter which the court held determined the character of the damages which might and must be recovered, if any, was apparently the proof that the building complained of was a permanent structure. The declaration in the case at bar does not allege in terms injury to market value, and apparently, deliberately and designedly, attempts to limit the allegation of plaintiff's injury and damnification to the period "up to and prior to the commencement of this suit." But the declaration nevertheless alleges that the plaintiff "still *is* greatly injured in the enjoyment of the premises, and *is* otherwise greatly injured and damnified."

We have no means of anticipating what may or may not be proved in this case, nor any desire of prejudging or prejudicing the course which the litigation may take, but it is possible that the evidence might be such that while allowing a recovery, the decisions in this state would demand that the recovery be entire for all damages, past, present or to come.

However that may be, our opinion is clear that the declaration as it stands states a good cause of action and is not demurrable. To that we confine our decision and our opinion.

The judgment of the Circuit Court is reversed and the cause remanded with directions to overrule the demurrer to the declaration and require the defendant to plead thereto.

*Reversed and remanded with directions.*